[No. 3793.   Decided June 28, 1901.]

CHARLES J. MYRBERG, *Respondent,* v. BALTIMORE AND SEATTLE MINING AND REDUCTION COMPANY, *Appellant.*

NEGLIGENCE—ACTION BY EMPLOYEE FOR PERSONAL INJURIES—NON-SUIT.

Defendant is not entitled to a non-suit in an action against it to recover for personal injuries resulting from its negligence in allowing dynamite to lie for several months near the mouth of its mine tunnel, exposed to heat and rain, thereby rendering its explosive character extra hazardous, when it appears from the evidence that plaintiff had been working for nearly two months in the mine removing dirt and rocks after blasts; that he knew of the existence and proximity of the exposed dynamite, but there was nothing to show that he knew of its extra hazardous condition because of its exposure to the weather, and there was nothing in his duties requiring him to be an expert in the knowledge or use of dynamite; and there was no evidence conclusively establishing plaintiff's contributory negligence, or that the explosion was the result of the unauthorized act of a fellow servant.

MISCONDUCT OF JUDGE — COMMENT ON FACTS WHEN RULING ON MO-
TION FOR NON-SUIT.

The action of the court in expressing an opinion on the
facts when ruling upon a motion for non-suit, is not error, al-
though made in the presence of the jury, when counsel have not
requested the withdrawal of the jury during argument and ruling
upon the motion.

ACTION FOR PERSONAL INJURIES — PHYSICAL EXAMINATION OF PLAIN-
TIFF.

The refusal of the court to allow the physical examination
of plaintiff in a personal injury case by an expert is not an abuse
of discretion, when such examination is asked for by defendant
in the midst of the trial. (*Lane v. Spokane Falls & N. Ry. Co.*,
21 Wash. 119, distinguished).

Appeal from Superior Court, King County.—Hon.
FRANK T. REID, Judge. Affirmed.

*Piles, Donworth & Howe*, for appellant.

*Bogle & Richardson*, for respondent.

The opinion of the court was delivered by

HADLEY, J.—This is an action for the recovery of dam-
ages for injuries received by the plaintiff, respondent here,
while in the employ of the defendant company, appellant
here. The complaint avers that on the 27th day of July,
1898, plaintiff was in the employ of the defendant and was
so employed to perform the duties of a miner in and about
the mine of the defendant; that the defendant, prior to
said date, negligently caused certain explosives to be de-
posited and exposed upon its premises about said mine in
an unsafe and dangerous place, and negligently allowed
said explosives to remain so exposed upon said premises
for a long time; that on said date, while plaintiff was en-
gaged in the performance of his duties in the service of
the defendant about said premises, the said explosives, by
some means to plaintiff unknown, were violently exploded,
by reason whereof the plaintiff's eyesight and hearing were

permanently injured, his nervous system shattered, and he rendered unable to perform labor. Wherefore he claims damages from the defendant in the sum of $15,000. The amended answer denies the material allegations of the complaint, and alleges affirmatively that the injury was caused by the negligence of a fellow servant, viz., one Charles Walters; that said Walters caused said injury by placing a drill against the rock, where powder for blasting purposes in said mine was stored, and by striking said drill with a hammer, so that said powder was exploded; that the said acts of the said Walters were not in the course of the business of mining, or pursuant to any directions or authority of the defendant, but were done by said Walters in a reckless manner, and out of the usual course of his employment; that said rock was a place where said Walters knew no drilling was to be done, and that it was liable to cause the powder there stored to be exploded, and that said injury was caused by the act of said Walters, without any act of negligence on the part of defendant. A further affirmative defense avers that the plaintiff negligently contributed to said injury, and that without such contributory negligence the injury would not have occurred; that such acts of contributory negligence were as follows, towit, the plaintiff, after having finished his work in the upper tunnel of the mine, instead of returning to the lower tunnel, which it was his duty to do, and where he would not have been injured by the explosion caused by said Walters, loafed around the mouth of the upper tunnel, and while so loafing the plaintiff saw his fellow servant Walters place the point of a drill upon the rock where powder for blasting purposes was stored, and where said Walters and plaintiff knew powder was stored, and plaintiff saw said Walters strike said drill with a hammer before the explosion which injured plaintiff occurred, and the

plaintiff made no protest against the action of said Walters, and did not attempt to leave said place and did not warn said Walters against danger from the act, and after said Walters had struck said drill several times while it was against said rock said explosion occurred, whereby plaintiff was injured; that both plaintiff and said Walters knew that the act of said Walters was liable to cause an explosion; that they both knew that such place was a place where powder was kept, and they both knew that the act of Walters in striking said drill with said hammer against said rock was an act which the said Walters had no right to do in the course of the business of mining, but was a reckless act, and the plaintiff knew that his remaining near said Walters while he was so acting was a reckless act on the part of plaintiff. The affirmative allegations of the answer are all denied by the reply. A trial was had before a jury, and a verdict was returned in favor of plaintiff for the sum of $1,000. Defendant moved for a new trial, which was by the court overruled; whereupon judgment was entered upon the verdict of the jury in favor of plaintiff for the sum of $1,000 and costs. From said judgment the defendant has appealed to this court.

The first assignment of error is that the court erred in refusing appellant's motion for a non-suit. It appears in evidence that about the time respondent began work at the mine he saw two gunny sacks on a rock near the mouth of the tunnel of the mine, which he was told contained old powder, and said powder remained there until the time of the accident. One White, a witness in behalf of respondent, as an expert on the subject of dynamite, testified that dynamite exposed for a time to the weather becomes extra hazardous and dangerous. He testified as follows:

"Question: In your opinion, Mr. White, if a mining company in its use of dynamite would allow a quantity

of dynamite, from 100 to 125 pounds, to be stored or allowed to remain on top of a rock that was of the dimensions of about 4x4x4, which rock was located anywhere from 60 to 75 feet, and may be not quite so much, from the mouth of the tunnel, and allowed to remain there from six weeks to two months in the open air, under the hot sun and the rain and the weather, now, under those conditions, in your opinion, what would be the effect on that dynamite?

Answer: It would render that dynamite rotten and dangerous. The weather and the sun would have the effect of driving out the nitro-glycerine, which is kept separate in the absorbent, and it would collect and would be extra hazardous and dangerous; powder under any circumstances is dangerous, and great care should be used in handling it, and that would be extra hazardous and dangerous.

Q. You say it would drive out the nitro-glycerine?

A. It would.

Q. What do you mean? Would it expand or evaporate, or come out in some form?

A. It would come out as nitro-glycerine, and would be, therefore, more dangerous than the way in which, in the first place, it is disseminated.

Q. Where would the nitro-glycerine go, up in the air, or down on the rocks?

A. Down on the rocks.

Q. In what form? How would it look like?

A. In melting as a liquid, and collected as crystals.

Q. Would it resemble oil?

A. It would look like oil when it was heated.

Q. What effect would the sun and rain and exposure have on that dynamite in relation to its explosiveness? Would it be more explosive in its form of pure nitro-glycerine if it is liberated from the absorbent, than while it is in the absorbent and wrapped up in the brown paper?

A. Decidedly so.

Q. Now, tell the jury, in your opinion, how explosive it is under those circumstances, supposing it was lying on that rock in the quantity of from one hundred to one hundred and twenty-five pounds, the sun having melted and allowed the nitro-glycerine to become free and run out over

the rock, and possibly on the ground around the rock; tell the jury, in your opinion, what would explode it, and what kinds of concussion would explode it.

A.    Almost any concussion; the concussion of the air might explode it under those circumstances; that is a generally accepted rule.

Q.    Might it explode of its own accord under those conditions?

A.    I think so.

Q.    Well, you think so; you mean to swear that it would, in your opinion?

A.    Yes, sir; decidedly.

Q.    In your opinion, Mr. White, if any nitro-glycerine had run out on the top of that rock, and from there down on the ground, under the conditions which I stated, if a man, a miner, was wearing large boots with nails in the heels, and if there were rocks on the ground where he was walking, would it be possible, or likely and probable, that the concussion of his heel could explode that dynamite?

A.    In my opinion, it would."

Appellant contends that respondent was employed as a miner, and as such he must have been chargeable as an expert in the knowledge and use of dynamite, and consequently with knowledge of the extra hazardous character of the powder upon the rock at appellant's mine when he learned it had been exposed to the elements for a time, and that, having such knowledge, he must, therefore, be held to have assumed the risk incident to working in such a place. It is further urged that the appellant as the mine owner and respondent as the miner were upon the same footing, each being engaged in the business of mining with dynamite; that one was as much chargeable with an expert's knowledge of the dangerous character of the explosive as the other; and that what was negligence in one would be held negligence in the other. We do not think the evidence shows these parties to have been upon an equal footing. It is true the respond-

ent testified that he had worked in different mines, and he had, therefore, some knowledge of mining; but his work in this mine was to remove the dirt and rock after the blasts, one Murphy being the drill man and charged with the duty of superintending and firing the shots for blasting purposes. It does not appear that respondent knew to what extent this powder had been exposed. He saw it upon the rock during the few weeks he worked at this mine before the accident, but evidently did not know about its previous exposure. The extent of its exposure was peculiarly known to appellant, and, as testified by the expert, the more extended the exposure the more hazardous it became. Moreover, the respondent's testimony shows that he was told by appellant's foreman that the powder was "old powder;" that it was "no good," and was "unuseful." Also that the president of appellant company told him he was going to have an expert examine the powder, because it was old and he did not know whether it could be used or not. We think, therefore, that it would be applying a severe and unjust rule to say that, under these circumstances, the respondent knew as much about this powder as the appellant did, and that he was as much chargeable with knowledge of its extra dangerous character as was the appellant. In any event, the master is charged with the duty of seeing that the premises where the servant is required to work are reasonably safe. In *McDonough v. Great Northern Ry. Co.*, 15 Wash. 244, 257 (46 Pac. 334), this court clearly stated this general principle as follows:

"We think that in reason and upon the authority of the better considered cases, it must be held that it is a positive duty which the master owes to an employee not only to provide him with a reasonably safe place in which to work —so far as the nature of the work undertaken and the exigencies of the case will permit the same to be made

reasonably safe—but also to observe such care as will not expose the employee to perils and dangers which may be guarded against by reasonable care and diligence; and where the performance of this positive duty is by the master entrusted to another, his failure to perform is the failure of the master."

It must have been manifest to the court at the time the motion for non-suit was made that the appellant had not exercised the degree of care contemplated by the above-stated rule. The fact that an explosive of a superlatively dangerous character was permitted for weeks to lie upon a rock within a few feet of the mouth of the tunnel to the mine, near which employees must daily pass and re-pass, was, we think, evidence of negligence of a high degree. There could have been no reasonable contention upon the motion for non-suit that the proximity of the explosive to the mine was due to the carelessness of a fellow servant, for the reason that the evidence as it then stood had disclosed the fact that the president of the company had knowledge of the situation, and that he was even indulging in procrastination as to the time when he should have an expert examine the powder to determine if it could be used. Two duties rested upon the appellant in the premises, viz. : First, to provide as reasonably safe environment where the respondent worked as the nature of the occupation would permit; and, second, to inform him of accompanying dangers by reason of the extra hazardous conditions. The rule governing these two duties is fully stated in *Mather v. Rillston,* 156 U. S. 391, 398, 399 (15 Sup. Ct. 464). The principle there discussed seems so peculiarly applicable to this case that we quote extensively from the opinion of the court, written by Justice FIELD, as follows:

"All occupations producing articles or works of necessity, utility, or convenience may undoubtedly be carried on, and competent persons, familiar with the business and

having sufficient skill therein, may properly be employed upon them, but in such cases where the occupation is attended with danger to life, body, or limb it is incumbent on the promoters thereof and the employers of others thereon to take all reasonable and needed precautions to secure safety to the persons engaged in their prosecution, and for any negligence in this respect, from which injury follows to the persons engaged, the promoters or the employers may be held responsible and mulcted to the extent of the injury inflicted. The explosive nature of the materials used in this case, and the constant danger of their explosion from heat or collision, as already explained, was well known to the employers, and was a continuing admonition to them to take every precaution to guard against explosions. Occupations, however important, which cannot be conducted without necessary danger to life, body, or limb, should not be prosecuted at all without all reasonable precautions against such dangers afforded by science. The necessary danger attending them should operate as a prohibition to their pursuit without such safeguards. Indeed, we think it may be laid down as a legal principle that in all occupations which are attended with great and unusual danger there must be used all appliances readily attainable known to science for the prevention of accidents, and that the neglect to provide such readily attainable appliances will be regarded as proof of culpable negligence. If an occupation attended with danger can be prosecuted by proper precautions without fatal results, such precautions must be taken by the promoters of the pursuit or employers of laborers thereon. Liability for injuries following a disregard of such precautions will otherwise be incurred and this fact should not be lost sight of. So, too, if persons engaged in dangerous occupations are not informed of the accompanying dangers by the promoters thereof, or by the employers of laborers thereon, and such laborers remain in ignorance of the dangers and suffer in consequence, the employers will also be chargeable for the injuries sustained. Both of these positions should be borne constantly in mind by those who engage laborers or agents in dangerous occupations, and by the laborers themselves

as reminders of the duty owing to them. These two conditions of liability of parties employing laborers in hazardous occupations are of the highest importance, and should be in all cases strictly enforced."

In *Tissue v. Baltimore & Ohio R. R. Co.,* 112 Pa. St. 91, 97, 98 (3 Atl. 667), the court says:

"The inquiry is rather as to the negligence of the company in permitting so great a quantity of dynamite to be placed in such a position that an accidental explosion of it might result in death or injury to its servants. Whilst it is true that the master does not warrant the absolute safety of those whom he employs to do his work, yet as we held in the case of *The Green & Coates Streets Passenger Railway Co. v. Bresmer,* 1 Out., 103, he is bound to take heed that he does not through his own want of care expose his servant to unnecessary risks or dangers, either from the character of the tools with which he supplies him, or the place in which he requires him to operate. As the question growing out of what is here stated is one of fact it can only be determined by the verdict of a jury. Ought the company's superintendent to have known that in placing the magazine where it was placed he was exposing the men engaged in operating the road, as well as others, to a danger to which they ought not to have been exposed? The question is not whether he did have knowledge of the peculiar properties of the material which he was intrusted to handle, for his ignorance in this particular would be no excuse for the company, but whether the agent thus intrusted ought to have been one who knew that dynamite was, from its nature, liable to accidental explosions such as could not be ordinarily foreseen or provided against. We would, indeed, be unwilling to assume that either Yardley or Armstrong knew that he was subjecting these laboring men to a danger so frightful. They may, like the men themselves, have entertained the common idea, that dynamite could not be exploded but by the ordinary method of percussion. But, as we have said, this ignorance, if ignorance it was, will not excuse the company, for there was a duty resting upon it to know, as far as it

was possible to know, the character of the material which it placed in the hands of its agents. In this we are not to be understood as pronouncing upon the chemical characteristics of dynamite, for about it we know little or nothing, or as charging negligence on the company or its agents. The act of putting the magazine where it was may have been prudent, or at least not unreasonably imprudent, and the explosion may have been the result of an accident which no ordinary human foresight could provide against, hence, one for which no one can be held responsible. But however this may be, the matter is, under all the evidence, for a jury, and to a jury it must be referred."

We think the evidence shows neither that the respondent was an expert in the use of dynamite, nor that it was his duty to be such expert for the discharge of his particular duties under this employment. An ordinary miner may have a general knowledge of the dangers attending the ordinary application of dynamite in a mine, and yet be ignorant of its extra dangerous character when exposed as in this case. Knowledge of this peculiar quality of the explosive can be had only by a scientific study of its qualities, or from specific instructions by one competent to give it by reason of his learning or experience. Upon this feature of the motion for a non-suit, we think the motion was properly denied. The evidence at the time the motion was made did not sufficiently support the affirmative allegations of the answer to have justified the granting of the motion. The respondent was the only person present at the time of the accident who testified at the trial. Some were killed by the explosion, and others were not present at the trial to testify. Whatever might have been the effect upon appellant's liability if the explosion was caused by the act of Walters, as alleged in the answer, still it was a question for the jury to determine whether the explosion was due immediately to the act of Walters or to

some other cause.  The motion for non-suit was in all particulars properly denied.

The second assignment of error is that the court erred in expressing an opinion upon the facts of the case in the presence of the jury when announcing his ruling upon the motion for non-suit.  The somewhat extended remarks of the court are set forth in full in the record.  It is contended by appellant that the rule announced in *State v. Crotts*, 22 Wash. 245 (60 Pac. 403), applies here.  That was a criminal case, and while a witness was upon the stand the court asked a number of leading and very suggestive questions.  This court held that it was reversible error.  The question presented there involved an act of the court in an attempt to draw forth certain evidence which was directly for the consideration of the jury, and was therefore connected with that branch of the trial of which the jury was peculiarly a part.  A motion for non-suit is directed to the court only, with which the jury have nothing to do.  It is doubtless the better practice for the jury to retire during the argument and ruling upon the motion for non-suit, and the court will usually direct this when it is requested by either party.  We think the proper rule applicable here is stated in *Blue v. McCabe*, 5 Wash. 125, 126 (31 Pac. 431), as follows:

"When counsel make a motion for a non-suit they know that it is a challenge to the court to determine the sufficiency of the facts adduced by the plaintiff, and that in deciding the motion, the judge may find it necessary to allude to the evidence.  It would be going entirely too far to hold that the denial of the motion must be limited to the formal words, since it is in the highest degree proper that the judge should give his reasons for his action.  In every such a case counsel who fear the effect of what the judge may say upon the jury, should secure the absence of the jury from the court room during the argument of their motion."

The third assignment of error is that the court erred in not requiring respondent, against his consent, to submit to an examination by an expert oculist and aurist. In *Lane v. Spokane Falls & Northern Ry. Co.,* 21 Wash. 119 (51 Pac. 367, 46 L. R. A. 153, 75 Am. St. Rep. 821), this court held that the trial court has the power, within its discretion, to require a submission to such examination. In that case the application was made prior to the commencement of the trial. In the case at bar the application was not made until after the respondent's testimony in chief was closed, and even after appellant had examined several witnesses for the defense. The court was in the midst of the trial, and such examination would have involved a delay of the trial and the time of the court and jury. Under these circumstances we think the application was not seasonably made, and that the court, in the exercise of its discretion, committed no abuse thereof.

The remaining assignments of error relate to the refusal of the court to give certain instructions requested by appellant. We do not deem it necessary to discuss these, since what has been heretofore said in discussing the motion for non-suit bears upon the points raised by the requested instructions. An examination of the instructions given by the court satisfies us that the jury were fully and fairly instructed as to the law applicable to the case.

Since we find no material error in the record, the judgment is affirmed.

REAVIS, C. J., and DUNBAR, ANDERS, MOUNT, FULLERTON and WHITE, JJ., concur.