[No. 4201.   Decided November 8, 1902.]

Josie Czarecki et al., Respondents, v. Seattle & San Francisco Railway & Navigation Company et al., Appellants.

COAL MINES — VENTILATION — DUTY OF OPERATOR — DEATH OF MINER FROM SUFFOCATION.

In an action to recover for the death of a workman in a coal mine caused by suffocation, an instruction was proper which set forth Bal. Code, § 3165, to the effect that the operator of every coal mine shall provide a good and sufficient amount of ventilation for such persons as may be employed therein, and then charged the jury that "the purpose of this law is to provide a reasonably safe place for the men to work in, and that the ventilation of the working places of the men shall be such as to maintain them reasonably safe from dangerous gases by a good and sufficient ventilation of the mine.   This is a positive duty imposed upon the operator and owner of the mine, and for the neglect of this duty the law holds such operator or owner liable if damages result therefrom."

SAME — ASSUMPTION OF RISK.

In such an action, it was proper to charge the jury that the degrees of care required of an operator of a coal mine and of the workmen employed underground differ; that "the miner or workman assumes only such risks and dangers as are open and apparent to him, or one in his position, and which are necessarily incident to his employment."

SAME — DELEGATION OF MASTER'S DUTY — WORKMAN AS VICE PRINCIPAL.

An instruction that a loader was a vice principal, as to part of his work, when a portion of his duties was to keep the chutes open as an airway, was proper, where the necessary ventilation of the mine was a positive duty of the operator.

SAME — CONCURRING NEGLIGENCE OF FELLOW SERVANT.

Where the negligence of the coal mine operator in failing to afford good and sufficient ventilation in the mine was the cause of injury to a miner, the fact that the act of a fellow servant concurred in producing the injury would not excuse the master.

SAME — EVIDENCE — NOTICE TO OPERATORS — COMPLAINTS OF BAD VENTILATION.

Evidence that complaints of the insufficient ventilation of the mine were made to the managers about the time of the suffocation of deceased was admissible for the purpose of showing knowledge on the part of the operator of the condition of the mine.

SAME — OPINIONS OF EXPERTS.

The admission of expert testimony is a matter within the discretion of the trial court, upon a showing of competency of the witnesses deemed satisfactory by the court.

NEW TRIAL — GROUNDS — INSANITY OF WITNESS.

The refusal of the trial court to grant a new trial on the ground of the insanity of one of the witnesses of the prevailing party will not be disturbed, where the testimony of the witness as given on the trial appears clear and intelligent, without any indication of mental aberration, and the trial court upon determining the motion for new trial found that the witness, though subject to certain hallucinations, was capable of making an intelligent and connected statement upon his examination at the trial.

Appeal from Superior Court, King County.—Hon. WILLIAM R. BELL, Judge. Affirmed.

*Wilshire & Kenaga (Kerr & McCord,* of counsel*)*, for appellants.

*Govnor Teats* and *Root, Palmer & Brown,* for respondents.

The opinion of the court was delivered by

REAVIS, C. J.—Appellants were jointly operating a coal mine at Leary, King county. John C. Czarecki, the deceased, had for several months prior to the 26th day of October, 1900, been in the employ of appellants as a coal miner. The general plan of working the mine was as follows: A gangway or tunnel had been driven in upon the vein of coal a distance of about 450 feet, and fifteen chutes, about 30 feet apart, had been driven above the gangway. No. 15 was inside chute. The chutes were

driven upward on the vein from the gangway at a pitch of between 40 and 45 degrees. At a distance of 20 feet up the chutes from the gangway there was the first crosscut, 4 feet by 4 in size, driven from chute No. 15 parallel with the gangway, and intersecting the other chutes. Chute No. 10 was driven through to the surface of the ground on the top of the hill, and at its exit was an electrical ventilating fan. All the chutes to and including No. 13 were closed between the gangway and first crosscut to prevent the air going through them from the gangway, and the main air course was through the gangway to chutes 14 and 15, and thence through them to the first crosscut, and thence back along the first crosscut to the exit at the top of chute No. 10. The second crosscut was driven through from chute No. 13, intersecting chutes Nos. 12, 11, and 10, 30 feet above the first crosscut; and 30 feet above the second was the third crosscut, driven through between chutes 13 and 12. A permanent stopping was placed between chutes 13 and 12 in both the second and third crosscuts, by which the air current was turned up chute No. 13 to the third crosscut, and thence to the exit at chute 10. The fan at the top of No. 10 created a vacuum, and the pressure of air blowing in at the gangway and into the crosscuts through chutes 14 and 15, and thence through chute 13, the third crosscut, and to the exit, made the circulation for ventilating the mine. The deceased went to work on the morning of the 26th of October, 1900, in chute No. 14, which had been before mined about 18 feet above the first crosscut by other miners. That afternoon he was found dead from suffocation caused by "black damp,"—carbonic acid gas. He was found by two or three miners who were searching for him. The allegations of negligence in the complaint are as follows:

· "That in the operation of the same mine on the 25th and 26th days of October, 1900, the defendants allowed the coal to go down through chute No. 15 and fill and block the air way and air passage so that at or about the time of the death of deceased herein complained of there was no ventilation in the said mine and especially in chute 14, and the air could not pass through the airways and could not ventilate the said mine and clear the same from poisonous and obnoxious gases. That in the operation of the said mine and the mining of the chutes the defendants did not provide brattice for the purpose of forcing the air up into the chutes, and at the time of the death of deceased, and for a long time prior thereto, there was no air passage up into the working place of chute No. 14 whatever, and through the negligence of the said defendants in not providing brattice so as to force the air up into the chutes and clear the same of gas and smoke and in allowing the airway to become blocked with coal at and near chute No. 15 and gas accumulated in the working place of chute No. 14 as herein set out, which was unknown to deceased but known to defendants and by reasonable care and diligence and inspection defendants could have discovered the same before ordering the deceased to enter the working place as herein complained of in said chute No. 14 on the said 26th day of October, 1900. That upon the 26th day of October, 1900, the deceased John Czarecki was directed by the foreman of the defendants, J. O. Edward, to work in chute No. 14. That the said chute was at that time driven up into the coal above the airway of first crosscut to the height of about 49 feet. That the deceased John Czarecki went to his working place in said chute No. 14, which was at or near the said second crosscut, as directed by the said defendants' foreman, and without any knowledge of the existence of deathly and obnoxious gases which had accumulated and been allowed to accumulate by the defendants in the working place of said deceased through the insufficient amount of ventilation, and was smothered and suffocated and killed by the said poisonous gases

soon after going into his working place upon the said 26th day of October, 1900."

The answer denies the material allegations of the complaint, and set up affirmatively as defenses contributory negligence on the part of deceased, and that he assumed the risk of a dangerous place in the mine. A number of special interrogatories were submitted to the jury at the request of the appellants, which together with the answers were as follows:

"1.    Was it the duty of John Czarecki, the deceased, to put up a brattice cloth or canvas in the chute in which he was working? Answer: No.

"2.    Was a brattice cloth or canvas up in place in chute fourteen above the first crosscut in defendants' mine? Answer: No.

"4    Was chute fourteen above the first crosscut in defendants' mine the working place of the deceased, John Czarecki? Answer: Yes.

"5.    Was there sufficient air circulating at the intersection of the first crosscut and chute fourteen to sustain the life of a man working as a miner in the defendants' mine? Answer: Yes, at said point.

"6.    Would a brattice cloth or canvas put up in place in chute fourteen above the first crosscut have caused to circulate at the working place of the deceased air circulating in the crosscut at its intersection with said chute on the day he was found dead at his working place? Answer: Yes, providing no coal was in the chute.

"7.    Was there as much air circulating at the place where the first crosscut intersects chute fourteen as there was circulating at the working place of David Steel in chute thirteen on the day of the death of the deceased? Answer: No.

"8.    Was there sufficient air circulating at the working place of David Steel in chute thirteen to sustain the life of a man working as a miner in the defendants' mine on

the day of the death of the deceased? Answer: Yes, at the intersection of thirteen chute and third crosscut.

"9.    Was there on the day of the death of the deceased a circulation of air at the place in the first crosscut where it intersects chute fifteen sufficient to sustain the life of a man working as a miner in defendants' mine? Answer: Yes, some, but not enough to sustain life.

"10.    Did the man-way in chute fourteen between the gangway and the first crosscut admit air to the first crosscut at its intersection with chute fourteen, on the day of the death of the deceased? Answer? Yes.

"11.    Was it the duty of the deceased to report to the defendant or any of their agents the fact of any working place of the deceased becoming filled or clogged with coal so as to prevent the circulation of air? Answer: No.

"12.    Could the deceased have detected by the action of his lamp the presence of black damp at his working place in the defendants' mine? Answer: No, he was not competent.

"13.    Could the deceased have seen powder smoke arising from blasts at his working place in defendants' mine? Answer: Yes.

"14.    Was deceased suffocated by powder smoke at his working place in defendants' mine? Answer: No.

"15.    Was deceased suffocated by black damp at his working place in defendants' mine? Answer: Yes.

"16.    Under the circumstances might the death of the deceased at his working place in defendants' mine have been caused otherwise than from suffocation by powder smoke, black damp or poisonous gases? Answer: No.

The jury returned a general verdict for respondent, and assessed the damages at $14,000.

1.    Eighteen assignments of error are made by appellants. The substance of these will be considered, without further reference to their numbers. A motion for nonsuit for insufficiency of the evidence was made after all the plaintiffs' evidence was offered, and a motion for a

verdict for defendants was made at the conclusion of all the testimony in the case. The oral evidence here extends over 300 pages of the record. It is not within the permissible limits of an opinion to set forth the evidence, and no brief review could be satisfactory. The testimony has been examined upon the exception to its sufficiency, and our conclusion is that substantial evidence supports the verdict. The answers to the special interrogatories are not inconsistent with the general verdict.

2.    In giving instruction No. 4, the court quoted the statute (§3165, Bal. Code), as follows:

"The owner, agent or operator of every coal mine, whether operated by shafts, slopes or drifts, shall provide in every coal mine a good and sufficient amount of ventilation for such persons and animals as may be employed therein , . . . and said air must be made to circulate through the shafts, levels, stables and working places of each mine."

The instruction continues:

"The purpose of this law is to provide a reasonably safe place for the men to work in, and that the ventilation at the working places of the men shall be such as to maintain them reasonably safe from dangerous gases by a good and sufficient ventilation of the mine. This is a positive duty imposed on the operator and owner of the mine, and for the neglect of this duty the law holds such operator and owner liable, if damages result therefrom."

No error is perceived here. No pertinent facts had been shown, making any duty of the mine inspector before the accident material. The instruction is substantially approved in *Costa v. Pacific Coast Co.,* 26 Wash. 138 (66 Pac. 398). The fifth instruction was as follows:

"I charge you further that the degrees of care required of an operator of a coal mine and of the workmen em-

ployed by them in underground work differ. The care required of the operator, as you have been instructed, does not apply to the workmen as to the methods of work in the operation of the mine. The miner or workman assumes only such risks and dangers therefrom as are open and apparent to him, or one in his position, and which are necessarily incident to his employment."

This instruction apparently relates to the risk assumed by the miner. The court had already correctly instructed upon the degree of care required of the operator in furnishing safe appliances and performing the duty of inspection, and here defines the risk assumed by the miner. See *Myrberg v. Baltimore & S. M. & R. Co.,* 25 Wash. 364 (65 Pac. 539) ; *Shannon v. Consolidated Mining Co.,* 24 Wash. 119 (64 Pac. 169). The consideration of the assignment upon this instruction may be applied to, and disposes of, the exceptions to the other instructions upon the assumption of risk. The eighth instruction given was as follows:

"I charge you further that the positive duty of keeping a good and sufficient ventilation in the mine being on the defendants, as you have been instructed, it matters not who or what persons performed work or assist in the work of ventilation. If you should find that it was necessary to keep chute No. 15, or any other chute, open as an airway in order to have a good and sufficient ventilation in chute 14 above the first crosscut, and that part of the duty of the loader was to keep chute 15 clear, then in that respect, in performing that particular work, he was assisting in performing a positive duty of the defendants to the deceased, and was, as to that work, a vice principal of the defendants, and not a fellow workman of the deceased."

This is within the principle announced in *Costa v. Pacific Coast Co., supra.* Instruction No. 10, which is, in substance, that the defendants are liable, though the act

of a fellow servant concurred in producing the injury, is also approved by several expressions of this court.     See *Costa v. Pacific Coast Co., supra.*

The instructions upon the defense of contributory negligence clearly stated the law, as did also those relating to the duty of inspection in connection with the exercise of reasonable care in the operation of the mine, and upon the whole case the instructions were equally as favorable to defendants as to plaintiffs.

Evidence was received, over the objection of the defendants, from several experienced miners, to the effect that about the time of the death of deceased the chute in which he was working contained bad air and was insufficiently ventilated, and that complaint on account of such conditions was made to the managers before the accident. This seems pertinent for the purpose of showing notice of such conditions to the operators. Exceptions were also taken to some expressions of experienced miners who were allowed to testify to conclusions in the nature of expert evidence.     This was permitted upon a showing of competency deemed satisfactory by the superior court.   Such evidence is peculiarly within the discretion of the trial court, and we can see no abuse thereof in the present instance.     The issues at the trial were chiefly, if not solely, questions of fact; and, as the instructions properly submitted such facts to the jury, its verdict must be conclusive.

3.   Some time after the rendition of the verdict defendants moved for a new trial on the ground that one of the material witnesses for plaintiffs, who testified at the trial, was at the time insane, or of such mental unsoundness as to render him incompetent, and that, in any view, his unsoundness of mind was such as to require caution-

ary instructions to the jury in weighing his testimony. It was shown that such mental condition of the witness was unknown to defendants at the time of the trial. The question of the mental soundness of the witness was heard upon evidence produced before the court. The court, in substance, found that the witness was subject to certain hallucinations, and that insanity had been hereditary in his family, and further found that witness at the trial was capable of making an intelligent and connected statement, that his testimony did not indicate insanity or mental aberration at the time, and that, if the fact of his mental infirmity as shown on the motion for new trial had been known at the trial, no instructions to the jury relating thereto would have been necessary. The testimony of the witness as it appears here is clear and intelligent. He was subjected to an exhaustive cross-examination, and, from his whole testimony, no indication is given of any mental aberration. The superior opportunities of the trial judge enable him to form a better conclusion as to the mental competency of the witness than are presented here. We are content to accept the conclusion that the witness was competent.

It is also urged that the damages assessed by the jury are excessive. There is no indication of passion or prejudice of the jury in the trial, and the evidence showing the damages is not insufficient to sustain the conclusion.

Upon the whole record, the judgment must be affirmed.

DUNBAR, FULLERTON, MOUNT and ANDERS, JJ., concur.