[No. 28847. Department One. January 14, 1943.]

GEORGE C. WHITE, *Respondent,* v. G. A. FENNER *et al.,* *Appellants.*[1]

[1]Reported in 133 P. (2d) 270.

*Eggerman, Rosling & Williams,* for appellants.

*Henry I. Kyle* and *George F. Hannan,* for respondent.

STEINERT, J.—Plaintiff brought suit to recover for personal injuries and property damage, resulting from a collision between an automobile which he was driving and a truck owned by the defendants, husband and wife, and operated at the time by the husband. The complaint charged the truck driver with negligently and unlawfully making a left turn upon an arterial highway, in the face of oncoming traffic, causing the truck to collide with plaintiff's automobile. Defendants answered, denying generally the material allegations of the complaint, pleading affirmatively contributory negligence on the part of the plaintiff, and cross-complaining for damages alleged to have been caused to the truck through the negligence of the plaintiff. The affirmative allegations of defendants' answer and cross-complaint were denied in plaintiff's reply.

The action was tried to a jury. At the close of plaintiff's case, defendants moved for a nonsuit. The motion was denied. At the conclusion of all the evidence, defendants moved for a directed verdict in their

favor. That motion was likewise denied. The case was then submitted to the jury and a verdict in favor of the plaintiff was returned. Defendants later moved for judgment notwithstanding the verdict and also for a new trial. Both motions were denied, and judgment was thereupon entered on the verdict. Defendants appealed. Plaintiff will hereinafter be designated as respondent, and defendant G. A. Fenner will be referred to as though he were the sole appellant.

The fourteen assignments of alleged error may be grouped under two heads: (1) error in denying appellant's successive motions challenging the sufficiency of the evidence to sustain a verdict for respondent and requesting a directed verdict and judgment for appellant, and (2) error in denying the motion for new trial, under which head appellant calls in question (a) certain instructions given by the court, (b) the refusal of the court to give other instructions requested by appellant, and (c) the admission of certain evidence over appellant's objections. We shall consider these assignments in the order stated.

A motion for nonsuit, for a directed verdict, or for judgment notwithstanding the verdict admits the truth of the plaintiff's evidence and all inferences that reasonably can be drawn therefrom, and requires that the evidence be interpreted most strongly against the defendant and in the light most favorable to the plaintiff. *Billingsley v. Rovig-Temple Co., ante* p. 202, 133 P. (2d) 265, and cases therein cited. Stated according to the requirements of this rule, the evidence upon which the jury was entitled to base its verdict may be related as follows:

The accident out of which this litigation arose befell on a day in late August at about seven o'clock p. m., on a public highway known as state highway No. 5, at a point approximately twenty feet north of the

intersection of that highway with the Kent-Kangley road. State highway No. 5 is an arterial highway extending in a northerly and southerly direction. It is built of concrete pavement twenty feet wide, with a yellow marker line along the center, and on each side of the pavement is an eight-foot shoulder consisting of gravel and dirt. South of the intersection and beyond the east shoulder is a deep ravine.

Intersecting state highway No. 5, at approximately right angles, is the Kent-Kangley road, which extends in an easterly and westerly direction. That road, which is a nonarterial thoroughfare, is about twenty-five feet in width and is paved with "black-top." Immediately north of the intersection and east of state highway No. 5 is another nonarterial road, called the Eatonville road, which extends in a northeasterly and southwesterly direction and has its western terminus at the state highway. The Eatonville road is approximately fifteen feet wide and at the time here involved had recently been improved with heavy gravel and crushed rock, but had not been oiled. At its terminus the Eatonville road flares out somewhat to the margin of both the state highway and the Kent-Kangley road, and in that area is covered with rough black-top.

The course of state highway No. 5 south of the intersection is straight but has an ascending grade of one per cent for a distance of about six hundred feet and then flattens out. At the time of the accident, the weather was clear and the pavement was dry. The maximum speed limit upon the state highway was at that time fifty miles an hour.

Respondent was driving his Dodge coupe north along state highway No. 5 toward the intersection at approximately the maximum speed just mentioned. At the same time, appellant was proceeding south in his loaded two-ton truck toward the intersection at a

speed of twenty or twenty-five miles an hour. For some distance back of the intersection, appellant had pursued an erratic course along the highway, "weaving" back and forth across the yellow line from one side of the road to the other. An automobilist who had been following him endeavored several times to pass him but was unable to do so because of appellant's confusing actions. As appellant approached the intersection, he first veered to the right, seemingly intending to turn west on the Kent-Kangley road; then, without giving any signal, he suddenly veered to the left in a southeasterly direction.

As respondent approached the intersection from the south, driving at a speed of about fifty miles an hour, he first observed appellant's truck when the two vehicles were about seven hundred feet apart. Respondent at that time was about five hundred feet south of the intersection and appellant was about two hundred feet north of it, traveling at an estimated speed of twenty or twenty-five miles an hour. Appellant was then well over on the west side of the road and gave respondent the impression that he intended to turn to his right at the intersection.

Apprehending no difficulty, respondent proceeded forward, at the same time reducing his speed to about forty-five miles an hour. When approximately two hundred seventy-five feet distant from the truck, respondent saw it suddenly swerve to its left toward the east lane of the highway along which respondent was traveling. Appellant gave no signal of his intention to make a left turn. The truck crossed the yellow line at a point approximately opposite the north line of the Eatonville road and about twenty or twenty-five feet north of the intersection. Respondent applied his brakes, thereby further reducing his speed to about twenty-five miles an hour. Appellant in the mean-

time had decreased his speed to about eight miles an hour but was still moving forward.

At a distance of one hundred fifty feet from the appellant, respondent applied his brakes firmly, leaving a skid mark one hundred thirty-nine feet along the pavement. Realizing his dilemma, created by the continued forward movement of the truck, respondent then endeavored to avoid the latter vehicle by steering his car to the right, toward the east shoulder of the highway. The truck continued on at its reduced speed, beyond the yellow line, in a southeasterly course, and projected its left front end over onto the easterly half of the highway a distance of six feet.

The front portion of respondent's car, then traveling with its two right wheels on the gravel shoulder, had completely passed beyond the front end of the truck, when the rear left side of the car was struck by the left front bumper and fender of the moving truck, causing the Dodge car to swing around and crash into a telephone pole located twenty-seven feet ahead, just off the east side of the highway. Respondent was thrown from his car, landing on his back near the edge of the highway, and sustained severe injuries. His car was practically demolished. The automobilist who previously had been following the appellant, and a state patrol officer who appeared on the scene shortly after the accident, both testified that they talked to the appellant at the scene and that they detected a distinct odor of intoxicating liquor on his breath.

It is but proper to say that appellant's evidence was to the effect that respondent was traveling at an excessive rate of speed as the latter approached the intersection; that, owing to the ascending grade and the flattening of the road beyond the crest, appellant did not appreciate respondent's excessive speed until the latter had reached a point about five hundred feet

distant from appellant; that at that time appellant had begun his turn to the left, within the intersection, after giving a signal by opening the left door of his truck; that, realizing he could not complete the turn ahead of the respondent, appellant then brought his truck to a stop within two feet, at a point where the left front fender was east of the yellow line a distance of three to five feet. Appellant concedes in his brief, however, that the jury decided the issue of respondent's speed in the latter's favor. Although appellant denied that he had been drinking on the day of the accident, he admitted upon cross-examination that he had been convicted three times of driving while intoxicated and that his operator's license had been suspended twice, once for a period of sixty days and once for a period of one year.

Appellant contends that, upon the facts as the jury was entitled to resolve them from the evidence, the respondent must be held to have been guilty of contributory negligence as a matter of law. His argument upon this contention advances alternative propositions. He first insists that the real cause of the accident was respondent's excessive speed; secondly, that, if respondent was not speeding, he could have avoided the collision in any one of a number of ways by the exercise of ordinary care.

Upon the first proposition it is sufficient to say, and appellant concedes, that the jury decided the issue of respondent's speed in the latter's favor. It was established by the verdict that respondent was not traveling at a speed in excess of that permitted by law and that his speed, whatever it may have been, was not a proximate cause of the collision.

Upon the second proposition, appellant urges that the respondent could have avoided the accident by (1) going over to, and along, the east shoulder of the high-

way; (2) turning to his right at the intersection into the Kent-Kangley road; (3) proceeding up the Eatonville road in a northeasterly course; (4) proceeding along the area east of the highway and north of the Eatonville road; (5) bringing his car to a complete stop before reaching the point at which the collision occurred.

It is undoubtedly true that respondent's right of way across the intersection was only relative with respect to other users of the highway, and that the duty rested upon him to exercise reasonable care to avoid the accident after he became aware, or in the exercise of reasonable care should have known, that the appellant was not yielding the right of way but was pursuing a course which would obviously obstruct respondent's progress across and beyond the intersection. *Stokoe v. Paulson,* 168 Wash. 1, 10 P. (2d) 247; *Butzke v. Hendrickson,* 172 Wash. 302, 20 P. (2d) 7; *Finical v. McDonald,* 185 Wash. 121, 52 P. (2d) 1250.

It is possible that had respondent taken one of the courses suggested by appellant, he might not have collided with appellant's truck or otherwise sustained any injury, and yet that is by no means certain. Had he steered his car onto the shoulder to his right sooner than he did, at the speed at which he was then going he might have landed in the ravine beyond the shoulder; moreover, he had no reason to believe that appellant, although he had begun to turn to his left at a slow speed, would proceed forward six feet across the east lane of the highway, instead of stopping at the center line. Had respondent turned abruptly to his right at the Kent-Kangley road he might indeed have wrecked his car. Had he turned northeasterly onto the Eatonville road he would have encountered loose, heavy gravel and crushed rock recently deposited. As soon as respondent observed appellant beginning to

make an illegal left turn, he did apply his brakes, leaving a skid-mark on the pavement one hundred thirty-nine feet long; besides, respondent testified that he "figured" that he could not stop in time to avoid a collision, and that his best course was to try to steer around the truck. The evidence shows that respondent did endeavor to take the course, suggested by appellant, of steering along the area to the right of the highway and north of the Eatonville road. In fact, the front of his car had attained that location, and had it not been for the continued forward movement of the truck, respondent would have been able to maneuver entirely onto that area.

In any event, respondent was faced with a sudden emergency, which had not been brought about by his own negligence, and under such circumstances he is not to be held to the exercise of the same degree of care to which he would be held if time were allowed within which to deliberate and choose the safest course. *Ritter v. Johnson,* 163 Wash. 153, 300 Pac. 518, 79 A. L. R. 1270; *Nystuen v. Spokane County,* 194 Wash. 312, 77 P. (2d) 1002; *American Products Co. v. Villwock,* 7 Wn. (2d) 246, 109 P. (2d) 570, 132 A. L. R. 1010.

Whether or not respondent was proceeding with reasonable care when confronted with an emergency, and, if so, whether or not he thereafter acted as a reasonably prudent man would have acted under the circumstances, were questions for the jury. *Lawe v. Seattle,* 163 Wash. 362, 1 P. (2d) 237; *American Products Co. v. Villwock, supra.* The motions for nonsuit, for directed verdict, and for judgment *non obstante veredicto* were, in our opinion, properly denied by the trial court.

We next consider the alleged errors with respect to appellant's motion for new trial. These are based on certain instructions given by the court, the

refusal to give other instructions requested by appellant, and the admission of certain evidence over appellant's objections. Appellant first complains of error in instruction No. 7 as given by the court. That instruction contained four separate and distinct paragraphs, in the first of which the court advised the jury that if it found from a fair preponderance of the evidence that the appellant in the operation of his truck was negligent *in some particular charged in the complaint* and that such negligence was the proximate cause of injury to the respondent, then its verdict should be in favor of the respondent, unless it should find that respondent was guilty of contributory negligence.

The second paragraph of the instruction, to which appellant directs his criticism, reads:

"On the other hand, if you fail to find that said Fenner [appellant], in the operation of his truck at said time, was negligent in any particular alleged in plaintiff's [respondent's] complaint, or, if negligent, that such negligence was the proximate cause of the collision, or if you do find from a fair preponderance of the evidence that plaintiff White, in the operation of his automobile at said time, was negligent *in some particular alleged in defendants' affirmative defense,* then plaintiff cannot recover and your verdict must be for the defendants." (Italics ours.)

Appellant excepted to this paragraph of the instruction for the reason that the allegations of the affirmative defense were simply general allegations of contributory negligence without setting forth any "particulars." Appellant argues that, since the instruction did not set forth any "particulars" with respect to contributory negligence, the jury was forced to disregard such plea altogether, to the prejudice of appellant.

In the third paragraph of that instruction, however, the court charged the jury that if it found the respond-

ent guilty of negligence in some particular alleged in appellant's *cross-complaint,* and further found that such negligence was the proximate cause of damage to the truck, then the verdict should be in favor of the appellant, provided that appellant himself was not guilty of contributory negligence. In outlining the case to the jury, the trial court specifically set forth four acts of negligence alleged by appellant to have been committed by respondent. Had the court particularized the acts of alleged contributory negligence in the second paragraph of its instruction, those acts as particularized would undoubtedly have been the same as those referred to in the succeeding paragraph, because the acts of negligence on which appellant relied for recovery in his cross-complaint likewise constituted the basis of his defense on the ground of contributory negligence. We can conceive no possible prejudice to the appellant by reason of the wording of the instruction.

Appellant next assigns error upon the giving of instruction No. 10 and the court's refusal to give appellant's requested instruction No. 7, with reference to speed. The instruction as given by the court and the requested instruction were identical in form except in one respect. Both of them specified the maximum lawful rate of speed as fifty miles an hour, and both quoted certain provisions of Rem. Rev. Stat., Vol. 7A, § 6360-64 [P. C. § 2696-891], including that provision which requires that every person operating a vehicle of any character upon the public highways "shall operate the same in a careful and prudent manner, and at a rate of speed no greater than is reasonable and proper under the conditions existing at the point of operation." Appellant's requested instruction limited its application to the respondent, while the instruction

as given by the court contained this provision, to which appellant excepted:

"If you find that *either party* was operating his vehicle at a rate of speed in excess of that allowed by law, then he was guilty of negligence as a matter of law." (Italics ours.)

Appellant contends that there is no allegation in respondent's complaint, nor any showing in the evidence, that the appellant was exceeding the speed limit or violating any provision of the statute quoted in the instruction, and that there can be no possible inference that appellant's rate of speed contributed in any way to the accident.

It is to be observed that the statute referred to above not only prescribes the maximum lawful rate of speed, but also inhibits any rate of speed "greater than is reasonable and proper under the conditions existing at the point of operation." As stated in 2 Berry on Automobiles (7th ed.), § 2.390, p. 431:

"Conditions may be such that an unreasonably slow speed is negligence, or that it is negligence for an automobile to move at all."

There was sufficient evidence, we think, to warrant the jury in finding that appellant suddenly swerved his truck to the left and thereafter operated it at a rate of speed, which, under the circumstances, was so great that he was unable to bring the truck to a stop in time to enable the respondent to exercise his right of way at that point.

However, should we consider the matter from appellant's viewpoint, we are satisfied that the jury was not misled by the instruction, to appellant's prejudice. Appellant's principal contention, as shown by the pleadings, the evidence, and his requested instructions, was that the cause of the accident was attributable to respondent's excessive speed. We are satisfied that

the jury well understood from the evidence and the instructions that the decisive issues were (1) whether or not appellant was guilty of negligence in making a sudden left turn in the face of oncoming traffic which had the right of way, and (2) whether or not respondent was guilty of contributory negligence by reason of his excessive speed immediately before the time of the collision. We find no error in the instruction sufficient to call for a reversal.

Appellant next assigns error upon the giving of instruction No. 11, and the refusal to give appellant's requested instructions Nos. 21 and 23. Instruction No. 11 quoted Rem. Rev. Stat., Vol. 7A, §§ 6360-85 and 6360-89 [P. C. §§ 2696-843 and 2696-847]. The first of these sections describes in detail the signal to be given by the driver of an automobile on making a left turn, and provides that no other signals shall be given for that purpose. The second of these sections of the statute provides that it shall be the duty of any operator of a vehicle, on entering an intersection and having signaled in the manner required by law his intention to turn to the left, to look out for and give right of way to vehicles approaching in the opposite direction and thereby placed on his right, when the two vehicles are simultaneously approaching a given point within the intersection, whether such driver on the right first reach and enter the intersection or not.

Appellant does not contend that the instruction, so far as it goes, is incorrect, but asserts that it should have gone further by stating the established rules with respect to the relative rights of drivers at highway intersections, as set forth in *Martin v. Hadenfeldt,* 157 Wash. 563, 289 Pac. 533. To accomplish that purpose, appellant proposed his requested instructions Nos. 21 and 23.

However, requested instruction No. 21 contained this statement:

"Neither does the law accord the driver on the right the right to collide with any vehicle in the intersection that may turn in front of him, when the driver of that vehicle has complied with the statute and accorded to the driver on the right space in which, by the exercise of reasonable care, to pass safely across the intersection."

It would have been improper, for at least two reasons, to give that portion of the requested instruction: (1) The evidence all shows that appellant did not give the proper signal on commencing his left turn, but, according to his own testimony, merely opened the left door of his truck; (2) the law requires the driver on the left, under situations such as were involved here, to accord to the driver on the right the entire half of the road along which the latter has the right of way, not merely "space" in which to pass safely across the intersection. *Warren v. Hynes,* 4 Wn. (2d) 128, 140, 102 P. (2d) 691, 697.

Requested instruction No. 23 sought to modify the effect of Rem. Rev. Stat., Vol. 7A, § 6360-89 (quoted in the court's instruction No. 11) by setting forth the four rules laid down in the *Hadenfeldt* case, *supra.* Appellant's purpose in this was to furnish the basis for having the jury find that he had been deceived by respondent's speed in approaching the intersection, warranting him in the belief that he had a fair margin of safety in crossing the east side of the highway ahead of respondent.

Aside from the fact that the jury by its verdict found that respondent was not traveling at an excessive rate of speed and hence could not have "deceived" appellant by any wrongful, negligent, or unlawful operation of his Dodge car, it is established by appellant's own testimony that he was not, and could not have been,

deceived by the fact that respondent was approaching the intersection at a rate of speed greater than the permissible maximum rate of fifty miles an hour. Appellant testified that, when he first began to make the left turn, he saw respondent's car at a distance of about five hundred feet; that as he made the turn, two feet further, he observed respondent's car three hundred feet away; and that he then brought his truck to a stop. On cross-examination he stated:

"Q. Then while you were going two feet he [respondent] must have gone about 200 feet, is that correct? A. Yes, sir. . . . Q. If he was going 200 feet that would be one hundred times more than you were going—he would be going 800 miles an hour. A. If I was going eight miles an hour [which he testified was his rate of speed] at the time I got stopped."

No reasonable mind could conclude, under appellant's own evidence, that he could have been deceived into thinking that respondent, three hundred feet distant, was traveling at a lawful rate of speed, when, according to his own testimony, the respondent had covered the preceding two hundred feet at a speed of approximately eight hundred miles an hour. We agree with the trial court's statement that appellant's requested instruction No. 23 was inapplicable to the facts shown by the evidence.

▮▮▮ Appellant's next assignment of error is directed to instruction No. 24 relating to damages recoverable. The instruction reads, in part, as follows:

"As to plaintiff's [respondent's] personal injuries, you will allow him such sum as you think will justly and truly compensate him for the *loss*, if any, which you believe he has sustained by defendant's [appellant's] negligence, if any. You will include such pain and suffering as he has endured, or will with reasonable certainty in the future endure; such impairment of health, if any, as he has suffered or will with rea-

sonable certainty in the future suffer; . . ." (Italics ours.)

Appellant's criticism of the instruction is that the word "loss" therein used is a broad term including within its possible scope many items, such as earnings, as to which there was no pleading or proof. In a succeeding paragraph of the same instruction, the court advised the jury that, while pain, suffering, and impairment of health could not be measured with mathematical exactness, such elements were nevertheless proper items for consideration in assessing damages, and further that in any event the amount allowed for *such items* could not exceed the sum of six thousand dollars, the amount stated in the complaint as the extent of respondent's personal injuries.

It is apparent, from a reading of the entire instruction, that the "loss," if any, for which respondent was entitled to recover was limited to pain, suffering, and impairment of health already suffered or which with reasonable certainty would be suffered in the future. We do not consider appellant's assignment of error of any substantial merit.

The two remaining assignments of error relate to the admission of certain evidence over appellant's objections. The first of these assignments has reference to the proof of damages to respondent's automobile. There was evidence to the effect that, immediately prior to the accident, the automobile was worth between $325 and $390. An automobile mechanic who had worked on respondent's car about ten days before the accident testified that the car had been reduced to junk worth only about fifty or seventy-five dollars. The complaint alleged that the car had been damaged to the extent of $250, and the court instructed the jury that it could not allow for damage to the car any sum

244

in excess of $250, the amount claimed by the respondent.

Appellant contends that the mechanic was not qualified to testify as an expert concerning the value of the car as junk. The witness was employed in the repair and maintenance of cars, and, in connection with his work, assisted the shop foreman in making estimates for repairs and in making appraisals of cars.

Whether or not a witness is qualified to testify as an expert upon a particular subject is largely within the discretion of the trial court, and the appellate court will not disturb the ruling of the trial court unless its discretion has manifestly been abused. *Kranzusch v. Trustee Co.*, 93 Wash. 629, 161 Pac. 492; *Lipsett v. Dettering*, 94 Wash. 629, 162 Pac. 1007; *Hill v. Arthur*, 103 Wash. 187, 173 Pac. 1092; *Oyster v. Dye*, 7 Wn. (2d) 674, 110 P. (2d) 863, 133 A. L. R. 720; Jones on Evidence, Civil Cases (4th ed.), § 369, p. 691. We do not think that the trial court abused its discretion in this instance, but rather do we believe that the evidence given by the mechanic was entitled to be considered in connection with the other evidence in the case.

Appellant's final assignment of error is based upon a ruling of the trial court permitting respondent to introduce certain blueprints as rebuttal evidence. Appellant's witness had previously testified that the distance from the center of the intersection to the crest of the one per cent grade to the south was but 425 feet. This testimony was given in support of appellant's contention that, when he commenced his left turn, he had not had sufficient time to ascertain and appreciate respondent's excessive rate of speed. The blueprints showed upon their faces that the distance between those points was actually 650 feet, thus affording appellant a view of respondent's car for a greater

length of time than that claimed by him. The blueprints were identified by an assistant to the county engineer as being copies of the plans and profile of the road filed in the engineer's office. The copies, however, were not certified. When the exhibits were offered, appellant objected to their admission "for the reason that there is a proper way to offer public documents, and these have not been offered in that way." The objection was overruled, and the exhibits were admitted.

Rem. Rev. Stat., § 1257 [P. C. § 7776], upon which appellant relies with reference to this assignment of error, provides:

"Copies of all records and documents on record or on file in the offices of the various departments of the United States and of this state, when duly certified by the respective officers having by law the custody thereof, under their respective seals, where such officers have official seals, shall be admitted in evidence in the courts of this state."

Rem. Rev. Stat., § 4147 [P. C. § 1766] prescribes that the office of the county engineer shall be one of record wherein shall be recorded and filed all matters concerning the public roads, highways, bridges, ditches, or other surveys of the county.

Assuming that the exhibits were not properly admissible unless certified, we do not think that appellant's objection was sufficiently specific to apprise either the court or counsel that the ground of the objection was lack of certification. The exhibits bore evidence indicating that they had been prepared by the county engineer and ordinarily no objection would be made to their admission. Had appellant pointed out specifically the ground of his objection, the defect could readily have been remedied by having the county engineer, or his qualified deputy, certify the documents then and there.

It is well settled that an objection, to be good, must point out the specific ground of the objection, otherwise no error is committed in overruling it. *Wagner v. Mahrt*, 32 Wash. 542, 73 Pac. 675; 26 R. C. L. 1048, Trial, § 57; 64 C. J. 180 *et seq.*, Trial, § 203. We do not believe that the ruling of the trial court constituted reversible error.

The judgment is affirmed.

ROBINSON, MILLARD, JEFFERS, and MALLERY, JJ., concur.

