[No. 41442. En Banc. December 23, 1971.]

DONALD WILSON et al., *Appellants,* v. LEE L. LUND et al., *Respondents.*

*Neil Hoff,* for appellants.

*Merrick, Burgess & Hofstedt,* by *F. Ross Burgess* and *Linda L. Dawson,* for respondents.

FINLEY, J.—This is an action for wrongful death of a 5-year-old boy instituted by his father, Donald Wilson, and his mother, Karen Wilson, plaintiffs (appellants), against the defendants (respondents), Lee L. Lund and his wife, doing business as Triple L. Ranch. The crux of this appeal is whether the legislature in amending RCW 4.24.010 in

1967 authorized the recovery of damages for mental anguish in cases involving the wrongful death of or injury to a child. We answer this question in the affirmative.

The action arose out of a riding mishap at the defendants' dude ranch on August 5, 1966, which resulted in the death of the Wilson's son, Kelly. Both parents instituted this action under RCW 4.24.010, alleging negligence on the part of the ranch owners.

In *Wilson v. Lund,* 74 Wn.2d 945, 447 P.2d 718 (1968), we held that the divorced mother, Karen Wilson, was entitled to bring suit in her own name. The order of the trial court dismissing the mother was reversed and the cause was remanded for further proceedings. We did not there reach the question raised, and the contention advanced by Karen Wilson in support of introducing psychiatric evidence because the order excluding the evidence in that case (without a prior call for an offer of proof or its equivalent) was premature.

Upon remand, the case was tried to a jury. The jury returned a verdict in favor of the plaintiff mother, Karen Wilson, for $12,500, and a verdict in favor of the plaintiff father, Donald Wilson, with no award of damages. The plaintiffs have appealed. Their crucial contention is that the legislature, in amending RCW 4.24.010 in 1967, authorized recovery for mental anguish or emotional harm as an element of damages—under appropriate circumstances in actions for the wrongful death of a child. Furthermore, in this connection, it is urged that the trial court erred in refusing to allow admission of psychiatric evidence and other evidence of grief, mental anguish or suffering of Karen Wilson, allegedly resulting from her child's wrongful death, for the purpose of recovering for emotional harm as an element of damages under RCW 4.24.010, as amended in 1967.

Three quarters of a century ago, Mr. Justice Holmes made the sage and significant statement that:

[t]he language of judicial decision is mainly the language of logic. And the logical method and form flatter

that longing for certainty and for repose which is in every human mind. But certainty generally is illusion, and repose is not the destiny of man. *Behind the logical form lies a judgment as to the relative worth and importance of competing legislative grounds, often an inarticulate and unconscious judgment, it is true, and yet the very root and nerve of the whole proceeding. You can give any conclusion a logical form.*

(Italics ours.) Holmes, *The Path of the Law,* 10 Harv. L. Rev. 457, 465 (1897). In the appellate briefs and arguments in this case, it seems apparent that the parties have made a conscious choice in emphasizing different and opposing premises, assumptions, or logical forms—which are potentially available to resolve—in either of two different ways—the problem of statutory interpretation presented to us in this appeal. In making a judicial decision in this case, our efforts need not be with less candor and awareness of the facts of life and the nature of the judicial process than revealed by the joint overall efforts of the parties in this appeal. Be this as it may: the crucial language of the 1967 amendment to RCW 4.24.010 reads:

damages may be recovered for the *loss of love and companionship* of the child *and for injury to or destruction of* the parent-child relationship  .   .   .

(Italics ours.) Respondents, seeking to uphold the judgment of the trial court, contend that the amendment does not provide recovery for mental anguish in cases involving the wrongful death of or injury to a child. They seek solace and support in the following:  (1) that denial of recovery for mental anguish is a principle well-entrenched in the judicial decisions of this state in cases of this nature;  (2) that few states permit the recovery of damages for mental anguish either under legislative enactments or by judicial decisions; and (3) that existing tort law in this and other areas generally does not allow recovery of damages for mental anguish where "ordinary" negligence is involved.

We are convinced that these arguments involve an uncritical one-sided application of legal logic and without concomitant, careful examination of the underlying assump-

tions and premises. The assumptions or premises implicit in all three arguments are that the legislature (1) was aware of this court's strongly-entrenched policy against recognition of damages for mental anguish; (2) was additionally aware that such damages have generally been disallowed in other jurisdictions; (3) was further aware that such damages are not frequently awarded in other areas of tort law; and (4) therefore intended to do nothing to change the status quo by enacting the 1967 amendment to RCW 4.24.010; *i.e.,* intended to continue the prevailing policy of our law disfavoring the award of damages for mental anguish.

■ The basic fault with these logical premises and conclusions is that their opposite seems more commonsensical, rational, and convincing. That is, if one assumes that the legislature was fully cognizant of this court's previous interpretation of RCW 4.24.010, predating the revised enactment in 1967, it is patently illogical to conclude that the legislature employed additional words and different language simply to reinforce or reenact the substance and meaning of the *preexisting statutory language* which this court had already construed to deny recovery for mental anguish in cases of the instant kind. Actually, if the legislature intended *no change*—but to continue the status quo— *i.e.,* no recovery of damages for mental anguish—this surely could have been accomplished best by doing nothing at all. Instead, the legislature took affirmative action and enacted the 1967 amendment of RCW 4.24.010. To accept the restrictive interpretation of the statute urged by respondents in support of the trial court's decision is to say the legislature did nothing at all in passing the 1967 amendment. Such reasoning, among other things, is contrary to the principle of statutory interpretation that the legislature does not indulge in futile and useless acts, but only in purposeful and meaningful ones.

But, the question is not just whether the legislature intended to change the law. The real question is *what change*

the legislature intended to make in the nature of damages recoverable for wrongful death of or injury to children.

■ A certain portion of the 1967 amendment initially presents little or no interpretative problem since the term "companionship" as an element of damages has received previous consideration and definition by this court. The measurement of this element has been detailed generally in *Lockhart v. Besel,* 71 Wn.2d 112, 426 P.2d 605 (1967), and in *Clark v. Icicle Irrigation Dist.,* 72 Wn.2d 201, 432 P.2d 541 (1967). In *Clark,* this court quoted with approval the definition of companionship stated in *Wycko v. Gnodtke,* 361 Mich. 331, 339, 105 N.W.2d 118 (1960):

> [J]ust as an item of machinery forming part of a functioning industrial plant has a value over and above that of a similar item in a showroom, awaiting purchase, so an individual member of a family has a value to others as part of a functioning social and economic unit. This value is the value of mutual society and protection, in a word, companionship.

Thus, previous decisions of this court construing the word "companionship" in statutory actions for the wrongful death of a child, substantially reduce the potential ambiguity in the statutory language debated in this appeal. But the 1967 amendment to RCW 4.24.010 *does not,* however, *confine damage recovery* in such actions to *loss of companionship.*

On the face of the statutory language employed, it is clear that the legislative amendment envisioned or intended that recovery may be granted for *several integral, and in our judgment, inseparable, elements of damage; viz.,* (a) loss of love, (b) loss of companionship, and (c) injury to or destruction of the parent-child relationship. The loss of or injury to a child is an experience involving a complex pattern of human relationships, emotional reactions, and responses. The 1967 amendment evidences recognition of this complex pattern.

To attempt to exclude from this complex pattern of emotional responses the possibility of recovery for parental grief and mental anguish, is to fail, without justification, to

ascribe any meaning—other than a negative one—to the statutorily expressed concept of recovery for *"loss of love . . . and for injury to or destruction of the parent-child relationship."* Such an exclusionary formulation—among other things—provides no guidelines or direction for determining precisely *what damages* are, in fact, recoverable for loss of love and damage to the parent-child relationship, and would be of little or no benefit to the practicing bar or to the bench in the day-to-day business of construing and applying the amended statute.

We cannot refuse to give positive meaning to one of the statutory phrases—"parent-child relationship"—merely because it is unique, and the language seems to have no readily ascribable "ordinary meaning." It is a fact that this language appears neither in statutory provisions of other jurisdictions relating to wrongful death recovery. Nor does the term "loss of love . . . and . . . injury to or destruction of the parent-child relationship" appear in any other statute of this state. However, all of these considerations are of little or no juristic significance. The fact that our legislature uses language which is infrequently or, for that matter, never employed in legislative enactments elsewhere is no reason for this court to refrain from its function and obligation to interpret and apply legislation which has been enacted into law and is actually involved in litigated cases before this appellate court.

We construe the language "loss of love . . . and . . . injury to or destruction of the parent-child relationship" *to provide recovery for parental grief, mental anguish and suffering as an element of damages intended by the legislature to be recoverable under appropriate circumstances in cases involving the wrongful death of or injury to a child.*

Initially, it may be noted that the instant record contains some indication of legislative history, albeit minimal, surrounding enactment of the 1967 amendment. The following exchange, occurring during legislative deliberation of the amendment, is reported in the Journal of the House of

Representatives, Fortieth Legislature, 1st ex. ses., at 1957 (1967):

At the request of Mr. Perry, Mr. Clark (Newman H.) yielded to question.

Mr. Perry:

"If a child was killed as the result of an unfortunate accident, the parents were in modest circumstances, and the mother had a nervous breakdown as a result of the child's death, do you think it is proper for the person who killed the child to take care of the mother's expenses?"

Mr. Clark:

"I certainly believe whoever caused the accident, even if negligence existed both ways, should be responsible. The fact that the sympathy is always with the parents who lost the child, however, means there should be some protection both ways."

Recognizing that legislative history is often illusive at best, the above statement nevertheless provides some indication that the framers of the 1967 amendment to RCW 4.24.010 intended it to authorize and encompass recovery for parental grief, mental anguish and suffering as elements of compensable damages in tort cases of the instant type.

Beyond this, however, we believe there are more fundamental reasons which compel a conclusion that the amendatory language was intended to expand damage recovery in such cases to include the element of mental suffering.

Judicial decisions regarding the definition and measurement of various elements of damage have often fallen short of producing consistent, rational and definitive standards. The area of tort damages, in particular, has produced myriad conflicting standards for allowing recovery of damages. Much of the confusion is unnecessary and could easily be obviated if legislatures and courts were to adopt and apply a more rational model for evaluating such damages.

Most tort damages involve physical as well as emotional or psychosomatic injury; and, all tort damages may, for analytic purposes, be classified as involving either tangible or intangible injury. Legislative bodies and courts have

traditionally restricted damage recovery for tortious injury to those injuries generally falling within a so-called "tangible-physical" category. It is, perhaps, understandable that legislators and jurists have been reluctant and slow to allow recovery for "intangible-emotional" tortious injuries. Such reluctance could, in past instances, be explained—and possibly justified—by the lack of medical knowledge, science, and expertise capable of diagnosing, evaluating, and proving or disproving such injuries. Also, there was, perhaps, the fear that the allowance of recovery for such injuries would lead to speculative, conjectural and inequitable award against tort-feasors guilty of only "ordinary" negligence.

We are convinced the indicated rationalization is no longer supportable. First, it may be noted that damages are now awarded, with some regularity, for "intangible-*physical*" injuries—*i.e.*, injuries, such as those to the spine or nervous system, which defy direct physical observation, but which are, nevertheless, medically recognizable and thus compensable. Allowance of recovery for such "intangible-*physical*" injuries has followed in the steps of expanded and improved medical expertise regarding diagnosis and treatment of such injuries.

Similarly, there is no longer any substantial justification for denial of recovery for "intangible-*emotional*" injuries. Modern-day, advanced psychiatric-psychological knowledge discounts former somewhat limited and provincial limitations surrounding proof or disproof of such injuries. And, it should be strongly emphasized that *"intangible-emotional" injuries can and do constitute real and significant harms.* In *Wycko v. Gnodtke,* 361 Mich. 331, 340, 105 N.W.2d 118 (1960), the Michigan court noted:

We are . . . restricting the losses to pecuniary losses, . . . not the sorrow and anguish caused by [the child's] death. *This is not because these are not suffered and not because they are unreal. The genius of the common law is capable, were it left alone, of ascer-*

*taining such damages, but the legislative act creating the remedy forbids.*

(Italics ours.)

The 1967 amendment to RCW 4.24.010 contains no such limitation on the award of damages for mental anguish. In fact, any injury involving "loss of love . . . and . . . injury to or destruction of the parent-child relationship," by elemental definition, involves *intangible emotional reactions and responses.* In light of the statute's previously enumerated provisions expressly allowing the beneficiary recovery for "medical, hospital, medication expenses, and loss of services and support, . . . [and] for the loss of . . . companionship of the child," recovery for mental anguish is the *only category of damages* which we can conceive could have been intended by the legislature in enacting the disputed statutory phrase. Simply and directly stated, *no legally recognizable category or element of damages remains—other than the category describable as compensation for mental anguish.*

We are not justified in assuming that "had the legislature intended to say or specify six—*i.e.,* mental anguish—it would not have used the word half-dozen—*i.e.,* loss of love and injury to or destruction of the parent-child relationship —but would undoubtedly have used the word six—*i.e.,* mental anguish." Such an assumption is tantamount to judicial usurpation of legislative prerogative; *i.e.,* unless the legislature employs *specific words* which are "old hat" or clearly known to judges and approved by them as to *specific meaning,* other and different language used by the legislature will be given no meaning and effect by the courts. In short, unless we were to conclude that the additional language of the 1967 amendment to RCW 4.24.010— *i.e.,* "loss of love . . . and . . . injury to or destruction of the parent-child relationship"—is mere surplusage and is to be afforded no meaning and effect, we must interpret that language to allow recovery for parental grief and mental anguish.

When the legislature of this state acts as to matters of

substantive law clearly within its jurisdiction and competence, it is indefensible for this court to attempt to modify or to negate such legislation. Such a judicial prerogative cannot be justified, in terms of the fundamental separation of legislative and judicial powers, even where the court strongly disagrees with, or is incalculably shocked by, a law enacted by the legislature. In terms of fundamental constitutional power and authority, we must render unto Caesar what is Caesar's—when it is clearly so, as here.

The foregoing describes the role of proper judicial restraint which the court should follow in the instant case. The legislature—in different words, in language of its own choice—has clearly provided that mental anguish and suffering may be an element of damages recoverable in cases involving the death of or injury to a minor child. That this court might disagree, be concerned, or even shocked that this should be the policy of our state law would not justify the failure of this court to recognize and effectuate the legislatively prescribed policy. We could not conclude that recovery for "injury to or destruction of the parent-child relationship" differs from recovery for mental anguish, without applying a totally unrealistic and conceptually indefensible surgical scalpel technique to distinguish or separate damage to the parent-child relationship from emotional damage. To attempt to do so would be to treat this case as if it concerned so many pounds of potatoes, other lowly vegetables, or material substances of some kind—rather than human feelings, responses and emotions.

■ In this regard, it is, perhaps, helpful to restate an obvious principle: damages for "intangible-*emotional*" injury—in this case the loss of love and injury to or destruction of the parent-child relationship—are subject to the same limitations imposed upon recovery for "tangible or intangible *physical*" injury; namely, they must be proved by competent, often expert, proof. Competent psychiatrists are, in our judgment, capable of proving and *defending against* allegations of emotional damage. At the same time, we would vigorously question the ability of such experts to

prove, defend against—or, for that matter—even define—the almost metaphysical element of damages which respondents contend is intended by the 1967 amendment; *viz.*, "injury to or destruction of the parent-child relationship" but *excluding or surgically excising* factors relating to "parental grief, mental anguish or suffering" as elements of such damages. Definition and application of elements of damage defined in this manner, if possible at all, is a task for theologians or metaphysical seers of former years—who could determine, it is reported, how many angels could dance on the point of a pin. Such metaphysical speculation is, in our judgment, not a habit, failing, or function of modern, well-trained and experienced psychiatrists or of finders of legal fact.

It should, perhaps, also be noted that restrictive judicial reaction to the allowance of recovery for mental anguish has often been premised upon the ground that, to allow these damages, would be to open a *Pandora's Box*—with resultant runaway jury awards. One inherent weakness of such an argument is that it can be made with respect to any personal injury litigation. Additionally, this argument fails to recognize the existence of an effective counterbalance—namely, excessive personal injury jury awards are subject to supervisory judicial judgment and authority to control runaway jury verdicts. In this state, trial courts are vested with the power to impose reduction of excessive verdicts, or, alternatively, to require plaintiffs to submit to a new trial. We have consistently upheld this power of the trial court. *See, e.g., Sherman v. Seattle,* 57 Wn.2d 233, 356 P.2d 316 (1960); *Lujan v. Santoya,* 41 Wn.2d 499, 250 P.2d 543 (1953).

In light of the trial court's instruction No. 12 in the instant case—which prevented the jury from considering grief, mental anguish or suffering of the parents in arriving at its determination—we remand the case for a new trial on the issue of damages only.

Before concluding, it is perhaps advisable to comment briefly upon one additional contention raised by appellants

herein—that the trial court abused its discretion in refusing to admit psychiatric testimony to show the effect on the appellant mother of the loss of companionship of the deceased child. Based upon the wide discretion afforded trial courts in such matters, we do not disagree with this conclusion. But, it seems an appropriate caution to emphasize that, for purposes of proving grief, mental anguish, or suffering, expert psychiatric testimony will often be useful and proper, if not absolutely necessary, in cases of the instant type (1) to provide a reasonably reliable basis for considering an award of such damages; (2) to prevent the trier of fact from falling into the realm of mere speculation and conjecture; and (3) to prevent the trier of fact from resorting out-of-hand to legal assumptions and conclusions which have little or no supporting medical or other reasonably reliable data.

For the reasons discussed above, this case must be reversed and remanded for a new trial on the issue of damages only.

It is so ordered.

HAMILTON, C.J., ROSELLINI, HUNTER, NEILL, STAFFORD, and WRIGHT, JJ., concur.

HALE, J., concurs in the result.

WRIGHT, J. (concurring)—This is an action for the death of a child. The facts are set forth in the majority opinion and in an opinion in an earlier appeal of the same case. *Wilson v. Lund,* 74 Wn.2d 945, 447 P.2d 718 (1968).

Several questions are presented in this appeal. The question herein discussed is the measure of damages, or otherwise stated, the proper interpretation of RCW 4.24.010.

The main parts of RCW 4.24.010 have been the law in Washington for 102 years, having been passed by the legislative session of 1869. Laws of 1869, ch. 1, § 9, p. 4 reads:

> A father, or in case of the death or desertion of his family, the mother may maintain an action as plaintiff for the injury or death of a child, and a guardian for the injury or death of his ward.

The provision was reenacted in 1873 and 1877. In 1881, it was included in the code of that year. The reenactments through and including the Code of 1881 were identical with the original language used in 1869.

In 1927 the legislature passed chapter 191 of the Laws of 1927, which read as follows:

SECTION 1. That section 9 of the Code of Washington Territory of 1881, (section 184 of Remington's Compiled Statutes; section 8264 of Pierce's 1919 Code) be amended to read as follows:

Section 9. A father, or in case of his death or desertion of his family, the mother may maintain an action as plaintiff for the injury or death of a minor child, or a child on whom either is dependent for support, and the mother for the injury or death of an illegitimate minor child, or an illegitimate child on whom she is dependent for support.

It is, therefore, obvious that for 98 years the statute law of Washington, both as a territory and as a state, had not undergone any change which concerns this problem. The right of action was given, but no measure of damages was fixed. Chapter 191 of the Laws of 1927 became RCW 4.24.010.

The extraordinary session of 1967 passed *inter alia,* chapter 81, which read:

Section 1. Section 9, page 4, Laws of 1869 as last amended by section 1, chapter 191, Laws of 1927 and RCW 4.24.010 are each amended to read as follows:

A father, or in case of his death or desertion of his family, the mother may maintain an action as plaintiff for the injury or death of a minor child, or a child on whom either is dependent for support, and the mother for the injury or death of an illegitimate minor child, or an illegitimate child on whom she is dependent for support.

In such an action, in addition to damages for medical, hospital, medication expenses, and loss of services and support, damages may be recovered for the loss of love and companionship of the child and for injury to or destruction of the parent-child relationship in such amount as, under all the circumstances of the case, may be just.

Chapter 81 was originally Senate Bill No. 519 and passed the Senate March 31, 1967. It was passed by the House on April 18, 1967 and was signed by the Governor April 26, 1967. The dates are important because on April 20, 1967, this court filed the opinion in *Lockhart v. Besel*, 71 Wn.2d 112, 426 P.2d 605 (1967). A comparison of the dates definitely establishes the *Lockhart* case and chapter 81 were a "coincidence" as said in a footnote to *Clark v. Icicle Irrigation Dist.*, 72 Wn.2d 201, 432 P.2d 541 (1967). The language of the statute therefore must be construed without regard to *Lockhart*.

Usual and accepted rules of statutory construction must be followed. One of the most fundamental of those rules is to give due consideration to the evil sought to be corrected.

We said in *State v. Stewart*, 52 Wash. 61, 64, 100 P. 153 (1909):

It is a familiar canon of the law that, in the construction of a statute, courts will look to the old law, the mischief, and the remedy.

It is well known there was widespread dissatisfaction with the measure of damages for the death of a child.

Loss of services as a measure was universally recognized to be a fiction. Of necessity, it led to lack of uniformity in verdicts, since juries were without any real guidance in fixing damages. For those and many other reasons the use of loss of services as a measure of damages for the death of a child was widely criticized.

With that background, the legislature in 1967 passed the addition to RCW 4.24.010. The first paragraph was unchanged, and a second paragraph was added which reads:

In such an action, in addition to damages for medical, hospital, medication expenses, and loss of services and support, damages may be recovered for the loss of love and companionship of the child and for injury to or destruction of the parent-child relationship in such amount as, under all the circumstances of the case, may be just.

The legislature acted. It must be presumed the action was for a definite purpose, to change the rule of damages.

The statute, which was well and carefully drawn, provides for compensation, "in such amount as, under all the circumstances of the case, may be just."

Instruction No. 12 contained the following language:

In making your determination, you should not consider any grief, mental anguish or suffering of the parents or the pain and suffering of the child.

The words "or the pain and suffering of the child" are proper since the action is one by the parents for the injury to them by the loss of the child. However, the words "you should not consider any grief, mental anguish or suffering of the parents" limit the measure of damages as set out in the statute. This the trial court may not do.

The language of the statute is clear. The jury is required by the statute to fix the damages, "in such amount as, under all the circumstances of the case, may be just." The limitation placed upon the jury by the words, "you should not consider any grief, mental anguish or suffering of the parents" is error.

Appellants also assign as error the refusal of the trial court to admit the testimony of a psychiatrist by deposition relative to the effect on the plaintiff mother of the death of the child. The trial court has wide discretion in such matters. *Myers v. Harter*, 76 Wn.2d 772, 459 P.2d 25 (1969); *Weber v. Biddle*, 72 Wn.2d 22, 431 P.2d 705 (1967).

The qualifications of expert witnesses are to be passed on by the trial court. It is within the sound discretion of the court and rulings on such matters will not be disturbed except for a manifest abuse of discretion. *Czarecki v. Seattle & S. F. Ry. & Nav. Co.*, 30 Wash. 288, 70 P. 750 (1902).

In *White v. Fenner*, 16 Wn.2d 226, 244, 133 P.2d 270 (1943), we said:

Whether or not a witness is qualified to testify as an expert upon a particular subject is largely within the discretion of the trial court, and the appellate court will not disturb the ruling of the trial court unless its discretion has manifestly been abused.

(Citations omitted.)

We will not substitute our judgment for that of the trial court when it can not be said the trial court abused its discretion. In the case at bar there is no showing of abuse of discretion. There is, therefore, no error.

This case should be remanded for a new trial on the issue of damages, with the jury to be instructed in accordance with the requirements of RCW 4.24.010. The other assignments of error are fully and correctly covered by the majority opinion.