466 P.2d 383

**The CITY OF TUCSON, a municipal corporation, Appellant,**

v.

**Jennie WONDERGEM, surviving spouse of Peter Wondergem, deceased, Appellee.**

**No. 9832–PR.**

Supreme Court of Arizona,
In Banc.

March 9, 1970.

Dino De Concini, City Atty., Tucson, Frederick S. Dean, Asst. City Atty., for appellant.

Rees, Estes & Browning, by William D. Browning, Tucson, for appellee.

McFARLAND, Justice:

This case comes before us on a petition for review of a decision of the Court of Appeals, Division II, which affirmed a judgment of the trial court in favor of appellee, Jennie Wondergem, surviving spouse of Peter Wondergem, deceased—hereinafter referred to as plaintiff—against the City of Tucson—hereinafter referred to as the City. The petition for review was granted, and the decision of the Court of Appeals is vacated.

There were two trials. In the first, a new trial was granted on the ground that an "Act of God" instruction was improper, which was affirmed by the Court of Appeals. 6 Ariz.App. 570, 435 P.2d 77. In the second trial, the plaintiff obtained a judgment in the sum of $60,000, and the Court of Appeals affirmed this judgment. 10 Ariz.App. 267, 458 P.2d 361.

The case grew out of a wrongful-death action against the City. On August 22, 1961, Peter Wondergem met his death as a result of drowning in Arroyo Chico. The decedent and the plaintiff moved to Tucson in 1960, and the flood of August 22, 1961, was the first since they had arrived. It was a large one, and the crest of the flood peaked in a matter of a very few hours. The site of the incident was Cherry Avenue at its point of traversal of Arroyo Chico.

The street in question is a north-south one, which crosses the Tucson Arroyo, a natural drainage channel flowing northwest. On the occasion in question, at the time of the peak flow at 10:00 p. m., the arroyo was carrying 5,000 cubic feet per second of water, while the conduit underneath the roadway had a maximum capacity of 2,500 cubic feet per second. The excess water flowed over the top of the paved road in a southeast to northwest direction. The principal flow across the highway was above the bridge over the arroyo, but there was water flowing diagonally across the road both north and south of the bridge. One witness testified that he crossed in this area at about 9:30 p. m., when there was approximately four to five hundred feet in horizontal expanse of water flowing across the road in depths ranging from zero to one and a half feet. At that time, the deceased's automobile had not yet become stranded in the water.

On that evening—at 9:38 p. m., August 22, 1961—the deceased was seen standing on the hood of his 1959 Plymouth automobile approximately 35 to 40 feet south of the south end of the bridge, with his car pointing eastward. His rear wheels were off the pavement on the west side of the road. The deceased was smoking a cigarette at the time. Though his car was surrounded by water, it was not at that time

in the main flow of the current. The water rose rapidly between 9:30 and 10:00 p. m. By 10:00 p. m., his car had been pushed by the flow of the water to within twelve to fourteen feet of the bridge and the deceased's car had been turned upside down by the current. At this time, deceased was standing on the underside of his car. A policeman (Clark) walked out on the bridge, and, holding onto the railing, extended a foot towards the victim, inviting him to grab hold with the intent of trying to pull him to safety. According to Clark, the deceased appeared frightened, and did not jump. Shortly thereafter, both the deceased and his car were washed past the bridge and down into the arroyo where they disappeared in the torrent. The deceased's body was recovered later several miles downstream.

■ The first question presented by the City is whether the court erred in giving a "sudden-emergency instruction." The City states that since the deceased was on the car roof for nearly thirty minutes he had ample time to evaluate the situation and make a reasoned choice as to what course of action to follow. We have held that where there is evidence of "sudden crisis," it is proper to give such an instruction. Gilbert v. Quinet, 91 Ariz. 29, 369 P.2d 267; Fulton v. Johannsen, 3 Ariz.App. 562, 416 P.2d 983. We are of the opinion that since the deceased was not familiar with "flash floods" and might easily not see that he was in danger, there was evidence of a "sudden crisis," which justified the giving of the instruction.

■ The City next contends that the court erred in giving, over its objection, an instruction on presumption of due care, namely:

"If you find that there is no credible evidence on the question of whether the deceased in this case exercised due care for his own safety just before he was killed, then you must presume that he did exercise due care. The law presumes that the deceased did exercise due

care unless the contrary is made to appear."

In the case of Robledo v. Kopp, 99 Ariz. 367, 409 P.2d 288, we said:

"It is generally accepted that where a person is killed by a violent injury and there are no eye witnesses there is a presumption that decedent was exercising due care at the time or that he was not seeking death by suicide. * * *"

In the Robledo case, in support of this holding, we cited to and quoted from Davis v. Boggs, 22 Ariz. 497, 199 P. 116, wherein, in passing upon a presumption of due-care instruction, we said:

"It is urged that the following instruction, given by the court, was erroneous:

"'In the absence of credible evidence on the question of whether plaintiff's decedent exercised due care in going upon the railroad crossing where he was killed, you must presume that he did. The burden is upon the defendants to show the contrary by a preponderance of the evidence. Therefore, if, under all the proven facts and circumstances of the case, the evidence of the defense is not of sufficient weight to establish the defendant's allegations in this respect by a preponderance of the evidence, your finding must be in accordance with such presumption of due care.'

"We see nothing wrong with the instruction. It is true that the plaintiff did not establish affirmatively that the decedent stopped to look or listen before attempting to cross the track. But this the plaintiff was not bound to do. Contributory negligence is a matter of defense, and the plaintiff is not required to prove its absence as a part of his case. The law presumes that the injured party was in the exercise of due care until the contrary is made to appear. The presumption is founded on a law of nature and has for its motives the fear of pain, maiming, and death. * * *"

It is the contention of the City that this line of cases is not applicable for the reason that in this case there were eye wit-

nesses. However, there were no eye witnesses to the decedent's driving into the arroyo. This objection could not go to that part of the incident. Even granting that the instruction would not be applicable as to the time there were eye witnesses to the actions of the decedent, the instruction was harmless since it was limited to such time as there was no credible evidence. Since the standard instructions as a whole fully covered that the burden of proof to show negligence is upon the party asserting it, it did not constitute prejudicial error. Inspiration Consolidated Copper Co. v. Bryan, 35 Ariz. 285, 276 P. 846.

■ The City contends that the trial court erred in permitting testimony as to funeral expenses, for the reason that there was no evidence that plaintiff was liable for such expenses. The plaintiff, however, states that since no objection had been made on this ground at the trial, it was waived on appeal. With this we agree. Milam v. Milam, 101 Ariz. 323, 419 P.2d 502.

■■ The City also contends that the trial court erred in refusing to give its proposed instruction on an assumption of risk. We agree with plaintiff that the evidence did not justify the giving of such an instruction. Such an instruction must have a factual foundation to support it. Nichols v. Baker, 101 Ariz. 151, 416 P.2d 584. The facts in the instant case fall far short of furnishing a factual basis for the giving of the instruction. The decedent was a resident of Wisconsin, and had only been in Arizona some sixteen months prior to his death. There was no evidence that he had knowledge of the dangers incurred in "flash floods" such as we have in Arizona. The street was unlighted and without flares, pots, or barricades. The evidence of the witnesses who testified indicated that the situation was deceiving, and unless one was familiar with this particular road

he could not be expected to know that driving into what appeared to be a small quantity of water would put him in danger of great bodily harm, or death. City of Tucson v. Holliday, 3 Ariz.App. 10, 411 P. 2d 183.

■ The City also contends that the court erred in instructing the jury that:

" * * * You may also consider as bearing upon the amount of your verdict, any anguish, sorrow, stress, mental suffering, pain, and shock which from the evidence, the death of Peter Wondergem may have caused his wife to suffer."

The City states this instruction permits a recovery of items not within Arizona's Wrongful Death Act. Whether there can be recovery for anguish, sorrow, stress, mental suffering, pain, and shock by the survivors depends upon an interpretation of § 12–613, A.R.S., which reads as follows:

"In an action for wrongful death, the jury shall give such damages as it deems fair and just with reference to the injury resulting from the death to the surviving parties who may be entitled to recover, and also having regard to the mitigating or aggravating circumstances attending the wrongful act, neglect or default. The amount recovered in such action shall not be subject to debts or liabilities of the deceased, unless the action is brought on behalf of the decedent's estate." [1]

The City argues that since the items are not specifically mentioned in § 12–613, A. R.S., they are not recoverable.

There is a division of authority upon this question. The City cites the following cases as supporting its position: Lockhart v. Besel, 71 Wash.2d 112, 426 P.2d 605; Wycko v. Gnodtke, 361 Mich. 331, 105 N. W.2d 118; Williams v. Dowling, 3 Cir., 318 F.2d 642. These cases hold that the right to recover damages in wrongful-death cas-

---

1. Judge Molloy, Court of Appeals, Div. II, who wrote the major portion of the opinion of the Court of Appeals, held against plaintiff in that she could not recover in a wrongful-death action. Judges Hathaway and Krucker, who became the majority on this question, held that they were recoverable.

es is purely statutory, and the amount of damages is limited by statutory restriction. For example, in Lockhart v. Besel, supra, a wrongful-death action was instituted by the father for the death of his son. In its decision the court quoted from the previous case of Skeels v. Davidson, 18 Wash.2d 358, 139 P.2d 301, 149 A.L.R. 225:

> " 'There is, perhaps, no other phase of the law of damages which is in so unsatisfactory a state as that concerned with the rule governing damages for the wrongful death of a child, under a statute such as our own which creates the right of action, but prescribes no measure of recovery.' (Italics ours.)"

In Lockhart v. Besel, supra, the court adhered to previous decisions, but said the "amount heretofore allowed" must be extended to "loss of companionship" but excluded "grief, mental anguish or suffering" as not recoverable. However, Washington does not have a statute permitting recovery of "damages as it deems fair and just * * * resulting from the death * * *."

Sec. 12–613, A.R.S., states:

> "* * * the jury shall give such damages as it deems fair and just with reference to the injury resulting from the death to the surviving parties who *may* be entitled to recover." [Emphasis added.]

Not to permit recovery for damages such as in the instant case where a wife had to be hospitalized from an emotional condition which required psychiatric treatment caused by the death of her husband would deprive a survivor of material damages "resulting from the death" of her husband. The wrongful-death statute in Virginia also contains the "fair and just" wording found in the Arizona Code. In holding that mental anguish was a recoverable item of damages, the Supreme Court of Appeals in Virginia stated, in Wolfe v. Lockhart, 195 Va. 479, 78 S.E.2d 654:

> "Instruction G. erroneously emphasized the idea that the purpose and object of the statute is to allow damages solely to those who might reasonably look to

decedent for support. That is a matter to be considered by the jury, but it is not the sole basis of recovery on which the statutory beneficiaries may rely or the only element of damage to be considered by the jury. There are other matters and elements, such as loss of decedent's care, attention and society, and the sorrow, suffering and mental anguish occasioned the beneficiaries by reason of his death, which may be considered and taken into account by the jury and are elements for which damages may be given to the statutory beneficiaries even though they may have had no reasonable expectancy of support from the decedent had he not been killed."

While the question presented was not the same as in the instant case, this Court, in Boies v. Cole, 99 Ariz. 198, 203, 407 P.2d 917, 920, stated that in a wrongful-death action:

> "* * * The measure of damages is no longer limited to pecuniary damages, but also includes allowance for such things as loss of companionship, comfort and guidance. * * *"

There can be little argument against allowing damages "resulting from the death" for "anguish, sorrow, stress, mental suffering, pain and shock," under the facts of the instant case, where we have held, as in Boies v. Cole, supra, that damages for loss of companionship, comfort and guidance are recoverable. The loss of companionship and comfort certainly results in sorrow, and the failure to permit such recovery falls short of "fair and just" standards set forth in § 12–613, A.R.S. See also Silverman v. Travelers Insurance Co., 277 F.2d 257 (5th Cir. 1960); Gallart-Mendia ex rel. Rosa-Rivera v. United States, D.C., 229 F.Supp. 284 (1964); Stamper v. Bannister, 146 W.Va. 100, 118 S.E.2d 313 (1961); Johnson v. Charleston and Western Carolina Ry. Co., 234 S.C. 448, 108 S.E.2d 777 (1959); Matthews v. Hicks, 197 Va. 112, 87 S.E.2d 629 (1955); Duran v. Mission Mortuary et al., 174 Kan. 565, 258 P.2d 241 (1953).

We hold that under the facts of the instant case the court did not err in giving the instruction permitting recovery for "anguish, sorrow, mental suffering, pain, and shock."

In view of the foregoing opinion, the decision of the Court of Appeals is vacated, and the judgment of the Superior Court is affirmed.

LOCKWOOD, C. J., STRUCKMEYER, V. C. J., and UDALL and HAYS, JJ., concur.