James Hamilton BEDGOOD and Robert Sorenson, Petitioners,

v.

Herbert MADALIN et ux., Respondents.

No. B–9037.

Supreme Court of Texas.

June 4, 1980.

Maddin, White & Brin, F. Van Huseman, Kleberg & Weil, Lev Hunt, Corpus Christi, for petitioners.

Guy Allison and Russel McMains, Corpus Christi, for respondents.

BARROW, Justice.

Respondents, Dr. Herbert Madalin and wife Sally Madalin, individually and as surviving parents of their eleven-year-old son, Robert, brought this suit against petition-

1. All statutory references are to Texas Revised Civil Statutes Annotated.

2. Although the evidence showed that Mrs. Madalin had suffered the same emotional trauma from the accident as Dr. Madalin, the court of

ers, James Hamilton Bedgood and Robert E. Sorenson, to recover damages under the Texas Wrongful Death Act, Article 4671, *et seq.*,[1] and the Texas Survival Statute, Article 5525. Liability was admitted by petitioners and only damages issues were submitted to the jury.

Judgment was rendered on the jury verdict as follows: respondents jointly recovered the sum of $35,000 for their pecuniary loss sustained as a result of the death of their son; the son's estate recovered $25,000 for the conscious pain and mental anguish suffered by Robert before his death; Sally Madalin recovered $25,000 for her mental anguish sustained as a result of her son's death; and Dr. Madalin recovered $20,000 for his mental anguish and $5,000 for his loss of earning capacity sustained as a result of the death of his son. The court of civil appeals ordered a remittitur of the $25,000 awarded to Mrs. Madalin for her mental anguish and, after remittitur, affirmed the trial court judgment.[2] 589 S.W.2d 797. No complaint has been perfected by respondents as to the remittitur. We affirm in part the judgment of the court of civil appeals and reverse and remand to the trial court for a new trial a severed part of the cause of action.

Petitioners urge that there are no pleadings to support the recovery by Dr. Madalin of damages for his mental anguish sustained as a result of his son's death and that in any event, recovery may not be had for these damages because the evidence establishes that Dr. Madalin was not in the zone of danger at the time Robert was struck by petitioners' vehicle.

Respondents alleged in their trial petition only the specific claims for damages authorized by these two statutory causes of action. In Paragraph II of their petition, they alleged:

"Plaintiffs bring this action pursuant to and under the Texas Wrongful Death

civil appeals agreed with the admission of respondents during oral argument that she could not recover because she was at a nearby shopping center at the time of the accident.

Act, Article 4677, Vernon's Texas Civil Statutes, and the Texas Survival Statute, Article 5525, Vernon's Texas Civil Statutes."

There was no allegation whereby either asserted any cause of action for physical injuries or emotional trauma sustained by them as a result of the death of their son.

 It is well settled that under the Texas Wrongful Death Act a surviving parent is entitled to recover as actual damages for the death of a child only the pecuniary value of the child's services until he reaches his majority, less the cost and expense of the child's care, support, education and maintenance, and such sums as might be reasonably expected as contributions after the child reached majority. No recovery may be had for mental anguish, grief, bereavement, or loss of companionship. *J. A. Robinson Sons, Inc. v. Wigart*, 431 S.W.2d 327 (Tex.1968); *Jasper County Lumber Co. of Texas v. McMillan*, 188 S.W.2d 731 (Tex. Civ.App.—Beaumont 1945, writ ref'd).[3] The Texas Survival Statute provides for the survival of a common law action for damages which could have been instituted on behalf of the minor child for the injuries which resulted in his death. This cause of action permits damages for the physical pain and mental anguish suffered by the injured child prior to his death. *Landers v. B. F. Goodrich Co.*, 369 S.W.2d 33 (Tex. 1963); *Mitchell v. Akers*, 401 S.W.2d 907 (Tex.Civ.App.—Dallas 1966, writ ref'd n.r. e.).

While we favor a liberal construction of pleadings, and particularly so in the absence of a special exception, respondents' petition did not give petitioners notice that they were asserting a claim in their own behalf for emotional trauma sustained by them because of the death of their son. Thus, petitioners were denied an opportunity to prepare for such a cause of action. Although the deposition of Dr. Madalin was taken regarding the matters asserted in respondents' petition, no discovery was had on this phase of the case. Petitioners promptly objected to the introduction of any evidence pertaining to the emotional trauma suffered by respondents and also timely objected to the submission of the damages issues inquiring as to these elements. These objections were overruled by the trial court.

 The court of civil appeals held that the trial court by overruling the objections, in effect, allowed a trial amendment in this regard. We disagree. There is nothing in the record to indicate that respondents sought to file a trial amendment. Rather, it was their contention before the trial court that additional pleadings were unnecessary in view of the admission of liability by petitioners. Petitioners' admission of liability[4] was necessarily predicated on respondents' petition and could not enlarge the claims asserted therein. Rule 67, Tex.R.Civ.Pro., requires that written pleadings, before the time of submission, shall be necessary to the submission of special issues

---

**3.** Respondent did not object and made no complaint on this appeal to the instruction given by the trial court as a part of the issue inquiring as to respondent's pecuniary loss that the jury not allow any amount by way of consolation for the death of Robert, or for any sorrow, anguish or grief suffered as a result of his death, or for the loss of society, affection, or companionship of Robert.

A bill was introduced in the 66th Legislature to amend the Wrongful Death Act to permit recovery by a parent for the wrongful death of an unmarried child under 21 years of age, in addition to actual damages, damages for mental anguish, emotional pain and suffering, and loss of companionship, comfort, protection, attention, advice, counsel, love and affection. House Bill 175.

This bill was not passed by the Legislature. Somewhat similar bills have been introduced in prior sessions, but none were passed. Since we are bound by the consistent legislative inaction on this matter, we continue to follow our prior decisions in this area although the pecuniary loss concept seems outmoded. *See* McClung, *The Value of a Child*, 25 Baylor L.Rev. 118 (1973).

**4.** "Now come James Hamilton Bedgood and Robert E. Sorenson, Defendants, and file this their Admission of Liability for such damages as the jury may determine resulted to Plaintiffs from the accident of September 14, 1974, described in Plaintiffs' petition."

even where issues are tried by implied consent. Since there were no proper pleadings, the trial court erred in overruling petitioners' objections to the introduction of evidence and the submission of special issues regarding damages sustained by respondents as a result of the death of their minor child. This error requires a reversal of that part of the judgment of the court of civil appeals which affirmed the recovery by Dr. Madalin for the damages sustained by him as a result of his mental anguish caused by the injury and death to his son. We express no opinion as to the merits of this claim.

■ Petitioners also complain of the admission of testimony from Dr. Madalin, over their objection, of his pecuniary loss by reason of the death of Robert of from $20,000 to $30,000 per year in medical practice by the loss of potential patient referrals. We agree with petitioners that this evidence is too remote and speculative to have probative force. This answer necessarily assumes that this eleven-year-old boy would maintain his interest in studying to be a doctor, successfully pursue his education and be licensed as such, decide to practice medicine in Corpus Christi, and have the type of practice that he could make referrals of heart patients to his father's clinic which would still be in operation.

We recognize the difficulties of the parents in making proof in this type case. As a result, the trial court is granted broad discretion in the introduction of evidence of probative force to show the survivors' pecuniary loss from the death of a small child. However, this testimony exceeds such bounds and it was error to admit same.

A more difficult question is presented as to whether the error in the admission of this evidence was such as to require a new trial. Nearly all the evidence offered at the trial related to the mental anguish and grief suffered by both respondents. The jurors were instructed in the court's charge not to consider this evidence in connection with the issue on pecuniary loss. Thus, respondents' evidence to show pecuniary loss related almost entirely to Dr. Madalin's loss of financial benefits from having a son as a referring doctor. The jury found very substantial damages for the pecuniary loss. We conclude from an examination of the record as a whole that the error in the admission of this evidence was such as was reasonably calculated to cause and probably did cause an improper verdict on this issue. Rule 503, Tex.R.Civ.Pro.

■ We agree with the holding of the court of civil appeals that there is more than a scintilla of evidence to support the jury finding that Robert suffered conscious pain and mental anguish before his death. We do not have jurisdiction to consider the factual question of excessiveness. *Flanigan v. Carswell*, 159 Tex. 598, 324 S.W.2d 835 (Tex.1959). We, therefore, affirm that part of the judgment which awarded Robert's estate damages under the Survival Statute.

The judgment of the court of civil appeals is affirmed in part and reversed and remanded in part. We affirm the award of the sum of $25,000 to the Estate of Robert Madalin, Deceased, under the Survival Statute; we reverse, sever and remand for a new trial the claim of respondents under the Texas Wrongful Death Act and the claim of Dr. Madalin for his damages for the mental anguish and loss of earning capacity he sustained as a result of the death of Robert; and we affirm the take-nothing judgment on the claim of Mrs. Sally Madalin for damages for her mental anguish sustained as a result of the death of Robert.

SPEARS, J., filed concurring opinion in which STEAKLEY and CAMPBELL, JJ., joined.

SPEARS, Justice, concurring.

I agree with the majority's holding which reverses and remands this cause for a new trial. Respondents' petition only alleged causes of action under the Texas Wrongful Death Act and the Texas Survival Statute. These allegations failed to give petitioners notice that Dr. Madalin was asserting an independent cause of action for the negligent infliction of mental anguish suffered as a result of his sensory perception of the

accident and the death of his child.[1] Petitioners' admission of liability was necessarily predicated on respondents' petition and could not enlarge the claims asserted therein.

I also agree that the question whether Texas should continue to apply the pecuniary loss rule as the proper measure of damages under the Wrongful Death Act is not preserved in this record. On remand of this cause and in all future causes of action under the Wrongful Death Act, however, I would reject the pecuniary loss limitation and allow a plaintiff to recover for all damages incurred as a result of a tortfeasor's negligence. A plaintiff's recovery should not be limited to loss of financial contribution and services. If proven, damages for loss of companionship and society and damages for mental anguish are also proper elements of recovery.

The language of the Texas wrongful death statutes does not preclude recovery of the aforementioned elements of damage. Like most states, Texas patterned its wrongful death statutes after Lord Campbell's Act. Neither the Texas statutes nor Lord Campbell's Act expressly limit recovery to pecuniary loss. Tex.Rev.Civ.Stat. Ann. article 4671 (Vernon)[2] creates a cause of action for "*actual* damages on account of the injuries causing the death . . . ." (emphasis added). Article 4677 establishes the measure of damages in a wrongful death action.

> The jury may give such damages as they may think proportionate to the injury resulting from such death.

The pecuniary loss limitation has been imposed by judicial construction of this language.

In the past a surviving parent's damages in an action for the death of a child under the Texas Wrongful Death Act has been limited to the pecuniary value of the child's services and financial contributions, minus the cost of his care, support, and education. This judicial construction of the Act, known as the pecuniary loss rule, makes the life of a child valueless and has been termed "an unwarranted and restrictive interpretation." Ferguson, *Damages For The Death Of A Minor Child Under The Texas Wrongful Death Act*, 4 St. Mary's L.J. 157, 160 (1972). Indeed, the commentators are virtually unanimous in their criticism of the pecuniary loss limitation. *See, e. g.*, 2 F. Harper & F. James, The Law of Torts § 25.14, at 1331 (1956); W. Prosser, The Law of Torts § 127, at 908–09 (4th ed. 1971); Decof, *Damages In Actions For Wrongful Death Of Children*, 47 Notre Dame Law. 197, 198 (1971); Speiser & Malawer, *An American Tragedy: Damages For Mental Anguish Of Bereaved Relatives In Wrongful Death Actions*, 51 Tul.L.Rev. 1, 5–6 (1976).

The pecuniary loss rule is based on antiquated concepts evolved in the rural 1800's, and it is totally unrelated to the present day realities of modern society.

> Modern economic reality emphasizes the gulf between the old concepts of a child's economic value and the new facts of modern family life. To limit damages for the death of a child to the monetary value of the services which the next of kin could reasonably have expected to receive during his minority less the reasonable expense of maintaining and educating him stamps almost all modern children as worthless in the eyes of the law. In fact, if the rule was literally followed, the average child would have a negative worth.

1. *See Dillon v. Legg*, 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912 (1968) (in bank). Although not necessary to the disposition of this appeal, in the future I would adopt the rule established in *Dillon*. *Accord, Leong v. Takasaki*, 55 Haw. 398, 520 P.2d 758 (1974); *Sinn v. Burd*, 486 Pa. 146, 404 A.2d 672 (1979); *D'Ambra v. United States*, 338 A.2d 524 (R.I.1975). The *Dillon* rule does not require actual visual observance of the accident, only "*sensory* and contempora-

neous observance of the accident, as contrasted with learning of the accident from others after its occurrence." *Dillon, supra*, 69 Cal.Rptr. at 80, 441 P.2d at 920 (emphasis added); *accord, Krouse v. Graham*, 19 Cal.3d 59, 137 Cal.Rptr. 863, 562 P.2d 1022, 1031 (1977) (in bank); *Corso v. Merrill*, 406 A.2d 300, 307 (N.H.1979).

2. All statutory references are to Texas Revised Civil Statutes Annotated.

*Selders v. Armentrout,* 190 Neb. 275, 207 N.W.2d 686, 688–89 (1973).

Strict application of the pecuniary loss rule would lead to an anomalous result in which the Wrongful Death Act creates a cause of action for the death of a child but prescribes no measure of recovery. *See Wardlow v. City of Keokuk,* 190 N.W.2d 439, 448 (Iowa 1971); *Lockhart v. Besel,* 71 Wash.2d 112, 426 P.2d 605, 608 (1967) (en banc). In fact, strict adherence to the pecuniary loss rule would ordinarily lead to the negligent tortfeasor being rewarded for having saved the parents the cost and expense of rearing a child. In order to avoid this result, juries and trial courts have circumvented the pecuniary loss rule, and appellate courts have sanctioned this practice. In criticizing the pecuniary loss rule, Prosser said:

> As any parent is well aware, any realistic view of the prospects must mean that the costs of rearing the child will far exceed any conceivable pecuniary benefits that might ever be optimistically expected of him; and damages honestly calculated on this basis could never be anything but a minus quantity. Nevertheless in such cases substantial verdicts have been sustained, where it is very evident that the jury have taken the bull by the horns, and in reality have compensated for the prohibited sentimental aspects of the family relation, with the court benevolently winking at a flagrant violation of the rule it has laid down. . . . Such decisions do not appear very likely to command respect for the administration of justice; but it seems evident that it is the theory which is wrong, and not the result.

W. Prosser, *supra,* at 908–09 (footnotes omitted).[3]

Today, courts in a majority of jurisdictions allow recovery of damages for loss of companionship and society under statutes which traditionally would have been inter-preted as limiting recovery to pecuniary loss. *See Krouse v. Graham,* 19 Cal.3d 59, 137 Cal.Rptr. 863, 562 P.2d 1022, 1025 (1977) (in bank); *Wardlow v. City of Keokuk, supra,* at 448, *Wycko v. Gnodtke,* 361 Mich. 331, 105 N.W.2d 118, 122 (1960); *Fussner v. Andert,* 261 Minn. 347, 113 N.W.2d 355, 363 (1961); *Selders v. Armentrout, supra* 207 N.W.2d at 689; *Lockhart v. Besel, supra,* 426 P.2d at 609. These courts recognize that a deceased child has a value to other members of the family as a part of the family unit and that a child's death represents a substantial injury to the familial relationship. *Krouse v. Graham, supra,* 137 Cal.Rptr. 863, 562 P.2d at 1026; *Wycko v. Gnodtke, supra,* 105 N.W.2d at 122–23; *see Decof, supra,* at 206–07; Green, *The Texas Death Act,* 26 Texas L.Rev. 133, 136 (1947). The true value of children is not in their potential for financial contribution, but in the rewards which flow from the familial relationship; *i. e.,* love, comfort, assistance, and companionship. *See Fussner v. Andert, supra,* 113 N.W.2d at 359; *Van Cleave v. Lynch,* 109 Utah 149, 166 P.2d 244, 249–50 (1946).

This court has recognized previously that injuries to the familial relationship are significant injuries and are worthy of compensation. In *Whittlesey v. Miller,* 572 S.W.2d 665, 668 (Tex.1978) we held that either spouse has a cause of action for loss of consortium suffered as a result of an injury to the other spouse by a tortfeasor's negligence. We held that loss of affection, solace, comfort, companionship, society, assistance, and sexual relations were real, direct, and personal losses and said that these losses were not too intangible or conjectural to be measured in pecuniary terms. *Id.* at 667. A parent's claim for damages for the loss of companionship of a child is closely analogous to the loss of consortium cause of action created in *Whittlesey.* In *Selders v. Armentrout, supra,* 207 N.W.2d at 689, the Nebraska Supreme Court noted this analo-

---

3. An analysis of damage awards for wrongful death of a child suggests that judicial acquiescence in circumvention of the pecuniary loss rule is selective and intermittent, with the rule being ignored most often in cases involving middle or upper-middle class children. Finkelstein, Pickrel & Glasser, *The Death of Children: A Nonparametric Statistical Analysis Of Compensation For Anguish,* 74 Colum.L.Rev. 884, 893 (1974).

gy with loss of consortium and said, "There is no logical reason for treating an injury to the family relationship resulting from the wrongful death of a child more restrictively."

In future wrongful death actions I would allow recovery for elements of damage similar to those delineated in *Whittlesey; i. e.,* loss of companionship, society, affection, and comfort. These elements of damage are not too abstract or speculative to be given a monetary value. Recovery is regularly allowed in other tort areas for injuries which are equally intangible; *i. e.,* pain and suffering. Nor is the fear of excessive verdicts a sufficient justification for denying recovery for loss of companionship. The judicial system has adequate safeguards to prevent recovery of damages based on sympathy or prejudice rather than fair and just compensation for the plaintiff's injuries, and the legislature is free to limit the amount recoverable for loss of companionship if it believes limitation is necessary. *See Fussner v. Andert, supra,* 113 N.W.2d at 363.

In addition to recovery for loss of companionship and society, I would allow a parent to recover for the mental anguish suffered as a result of a child's wrongful death. An injury to the parent-child relationship results in mental anguish, and it would be unrealistic to separate injury to the familial relationship from emotional injury. *Wilson v. Lund,* 80 Wash.2d 91, 491 P.2d 1287, 1292 (1971) (en banc). Today, with increased medical and scientific knowledge of psychic trauma, emotional injuries can be diagnosed and proved by competent medical evidence. In fact, injuries resulting from mental anguish may actually be less nebulous than pain and suffering, or even injuries resulting from loss of companionship or loss of consortium.

It is hard to distinguish the deep emotional wounding of the bereaved parent from the physical pain and mental suffering of the plaintiff with bodily injury, or the loss of enjoyment of one who can no longer engage in sports or favorite activities, or the loss of consortium by the spouse of an injured victim.

Lambert, Rheingold & Joost, *Recent Important Tort Cases,* 30 N.A.C.C.A.L.J. 188, 194 (1964). A plaintiff should be permitted to prove medically the damages resulting from a tortfeasor's negligent infliction of emotional trauma. *Leong v. Takasaki,* 55 Haw. 398, 520 P.2d 758, 767 (1974).

The damages recoverable, however, should be for actual mental injuries rather than mere fear, anger, or sorrow. In most instances the normal grief reaction will result in little or no actual mental injury, and the damages suffered will be minimal or nonexistent. When the emotional trauma results in depression or other secondary reactions, however, the plaintiff should recover for the damages incurred. *See generally* Leibson, *Recovery Of Damages For Emotional Distress Caused By Physical Injury To Another,* 15 J.Fam.L. 163, 190–209 (1976–1977); Comment, *Negligently Inflicted Mental Distress: The Case For An Independent Tort,* 59 Geo.L.J. 1237, 1248–53 (1971).

Presently, courts of several states allow recovery for mental anguish under statutes similar to Texas' statute. In *City of Tucson v. Wondergem,* 105 Ariz. 429, 466 P.2d 383, 388 (1970) (in banc) the Arizona Supreme Court allowed a plaintiff to recover for mental anguish in a wrongful death action under a statute which provided "the jury shall give such damages as it deems fair and just with reference to the injury resulting from the death . . . ." The court said:

> Not to permit recovery for damages such as in the instant case where a wife had to be hospitalized from an emotional condition which required psychiatric treatment caused by the death of her husband would deprive a survivor of material damages "resulting from the death" of her husband.

*Id.* 466 P.2d at 386. The court noted that the Arizona Wrongful Death Act had already been interpreted to allow recovery for loss of companionship and comfort and said that these losses result in mental anguish. *Id.* at 386.

In *Smith v. Wells*, 258 S.C. 316, 188 S.E.2d 470, 471 (1972) the South Carolina Supreme Court allowed recovery for mental anguish under a statute substantially the same as Texas' statute. The South Carolina statute provided that "the jury may give such damages . . . as they may think proportioned to the injury resulting from such death . . . ." The courts in Virginia and West Virginia allow recovery for mental anguish under statutes providing for damages that are fair and just. *See Matthews v. Hicks*, 197 Va. 112, 87 S.E.2d 629, 633 (1955); *Stamper v. Bannister*, 146 W.Va. 100, 118 S.E.2d 313, 317 (1961).[4]

This court should revise its interpretation of the Texas wrongful death statutes in light of present social realities and expand recovery beyond the antiquated and inequitable pecuniary loss rule. We are not bound by prior legislative inaction in an area like tort law which has traditionally been developed primarily through the judicial process. Green, *Protection Of The Family Under Tort Law*, 10 Hastings 237, 245 (1959). In his article, Dean Green criticized the pecuniary loss rule as outdated and inequitable and suggested that it is within the function and power of the courts to remedy this problem. *Id.* at 245. He said that because the difficulties in reducing the refinements of tort law doctrines into statutory form often result in legislation which is either underinclusive or overinclusive and which is frequently couched in ambiguous terms which the courts must interpret, judicial decision is the best way to develop tort law. *Id.* at 246. Inaction of the Legislature cannot be interpreted as prohibiting judicial reappraisal of the judicially created pecuniary loss rule. "[A] legislature legislates by legislating, not by doing nothing, not by keeping silent." *Wycko v. Gnodtke, supra*, 105 N.W.2d at 121–22. Moreover, a survey of 20th Century legislation indicates that all legislation has been in the direction of eliminating the pecuniary loss restriction. Speiser & Malawer, *supra*, at 22.

In recognizing a cause of action for loss of consortium we said:

[A]bdication of judicial responsibility is no longer called for in light of present social realities. The law is not static; and the courts, whenever reason and equity demand, have been the primary instruments for changing the common law through a continual re-evaluation of common law concepts in light of current conditions.

*Whittlesey v. Miller, supra*, at 668. The same reasoning applies to the present question. The Texas Wrongful Death Act does not require that damages be limited to pecuniary loss based on a child's financial value to the parents, and this court is free to interpret the statute to allow recovery for such elements of damage as loss of companionship, loss of society, and mental anguish. It is time for Texas to take this step into the 20th Century.

STEAKLEY and CAMPBELL, JJ., concur.

---

4. In addition, four states, Arkansas, Florida, Maryland, and New Hampshire have enacted statutes which specifically provide for recovery of a parent's mental anguish resulting from the wrongful death of a child. See 2 S. Speiser, Recovery for Wrongful Death 2d, Appendix A, at 643–787 (1975).