GULF STATES UTILITIES COMPANY, et al., Appellants,

v.

Paula REED, et al., Appellees.

No. A14–82–813CV.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 4, 1983.

Rehearing Denied Sept. 8, 1983.

David Kreager, Orgain, Bell & Tucker, Walter J. Crawford, Jr., Wells, Peyton, Beard, Greenberg, Hung & Crawford, Beaumont, Richard D. Billeaud, Houston, for appellants.

Joseph R. Steele, Provost, Umphrey, Doyle & McPherson, Port Arthur, for appellees.

Before J. CURTISS BROWN, C.J., and DRAUGHN and ELLIS, JJ.

ELLIS, Justice.

Appeal is taken from a judgment awarding damages to appellee, Paula Reed, based on a jury verdict and denial of appellants' motion for judgment N.O.V. We affirm in part, and reverse and render in part.

Appellee, Paula Reed, mother of the deceased minor, Vernon Lee Johnson Jr., brought suit under the Wrongful Death Act, TEX.REV.CIV.STAT.ANN. art. 4671 (Vernon Supp. 1982–83) and the Survival Statute, TEX.REV.CIV.STAT.ANN. art. 5525 (Vernon 1958). The father, Vernon Lee Johnson, Sr., intervened in the suit. Defendant-appellants, Gulf States Utilities Company and Southwestern Bell Telephone Co., entered into a stipulation and waiver of proof of their negligence, but reserved the right to contest damages. The incident giving rise to the suit was the death of appellee's son, Vernon Lee Johnson, Jr., age 13, who was electrocuted when he crawled under a metal building to retrieve a Frisbee. The building was electrified because a live wire owned by Gulf States Utilities was lying on it. The wire was attached to a Southwestern Bell utility pole, which had been damaged, causing the wire to sag onto the building. At the time of her son's accident, appellee was visiting her husband in another town, approximately twenty-five minutes away. Appellee's husband told her of the boy's death, at which time Mrs. Reed rushed to the hospital, where she saw her son lying on a table under a sheet.

The jury awarded damages of $20,000 for future contributions Vernon Johnson, Jr. in reasonable probability would have made to his mother after he reached the age of eighteen, and $10,000 for the conscious physical pain and mental anguish he suffered as a result of the occurrence. The jury also awarded appellee $500,000 for the loss of the society of her son and $500,000 for her mental anguish. Additionally, it awarded her past and future medical expenses of $45,000, and past lost earnings of $15,000, resulting from the incident.

In points of error one through twelve, appellants assert the trial court erred in allowing pleadings, proof, submission and recovery of damages for appellee's personal injuries, because she was not in the zone of danger at the time of the accident. Appellants contend the damage awards, which include appellee's mental anguish, past and future medical and hospital expenses, lost earnings, and loss of earning capacity, are not recoverable as a matter of law.

Further, in points of error thirteen through twenty-one, appellants argue that the trial court erred in permitting pleadings, evidence, and submission of damage issues for loss of society, as this award is not recoverable by a parent for the death of a child under the wrongful death statute. Although the Texas Wrongful Death Act does not expressly limit recovery to pecuniary loss, i.e. the pecuniary value of the child's services and financial contributions, less the cost of his care, support, and education, the courts of this state have so limited the statute since the supreme court's holding in *March v. Walker,* 48 Tex. 372, 375 (1877). In *March,* the supreme court held that because the Texas Wrongful Death Act was patterned after Lord Campbell's Act, an English law which restricted a recovery to pecuniary loss, damages under the Texas statute would also be measured by pecuniary loss.

As recently as 1980, the supreme court left undisturbed the pecuniary loss rule. In *Bedgood v. Madalin,* 600 S.W.2d 773 (Tex. 1980), respondents sought recovery for mental anguish sustained as a result of the

death of their son. While the court expressed no opinion as to the merits of respondents' claim because it was not properly preserved, it did note that the Texas Wrongful Death Act was limited by the pecuniary loss rule, and stated that "[n]o recovery may be had for mental anguish, grief, bereavement, or loss of companionship." *Id.* at 775. However, in a concurring opinion, Justice Spears stated that, while respondent had not properly preserved the issue, a plaintiff's recovery should not be limited to pecuniary loss. Justice Spears stated that, in future wrongful death actions, he would allow recovery for loss of companionship, society, affection and comfort. In addition, he would allow recovery for "mental anguish suffered as a result of a child's wrongful death." *Id.* at 779.

In the recent case of *Sanchez v. Schindler,* 651 S.W.2d 249 (Tex.1983), the supreme court was again asked to determine whether Texas should continue to follow the pecuniary loss rule in measuring damages for the death of a child. In *Sanchez,* the court chose to abandon this long-standing rule, and allowed plaintiff, Mrs. Sanchez, to recover $102,500 in damages for the mental anguish suffered from the death of her son.

Mr. and Mrs. Sanchez were at home in Corpus Christi when their son was injured in Key Allegro, Texas, and they were told of the accident by a neighbor. While they were not allowed to see their son, they were able to see his bloody legs through the doorway. The court, in rejecting the pecuniary loss rule, stated:

This court has recognized previously that injuries to the familial relationship are significant injuries and are worthy of compensation. In *Whittlesey v. Miller,* 572 S.W.2d 665, 668 (Tex.1978), we held that either spouse has a cause of action for loss of consortium suffered as a result of an injury to the other spouse by a tortfeasor's negligence. We held that loss of affection, solace, comfort, companionship, society, assistance, and sexual relations were real, direct and personal losses and said that these losses were not too intangible or conjectural to be measured in pecuniary terms. *Id.* at 667. A parent's claim for damages for the loss of companionship of a child is closely analogous to the loss of consortium cause of action created in *Whittlesey.* In *Selders v. Armentrout* [190 Neb. 275], 207 N.W.2d 686, 689 (Neb.1973), the Nebraska Supreme Court noted this analogy with loss of consortium and said, "There is no logical reason for treating an injury to the family relationship resulting from the wrongful death of a child more restrictively." *Id.* 651 S.W.2d at 252.

It further stated that:

A parent's recovery under the wrongful death statute includes the mental anguish suffered as a result of the child's wrongful death. The destruction of the parent-child relationship results in mental anguish, and it would be unrealistic to separate injury to the familial relationship from emotional injury. *Wilson v. Lund,* 80 Wash.2d 91, 491 P.2d 1287, 1292 (Wash. 1971) (en banc.). Injuries resulting from mental anguish may actually be less nebulous than pain and suffering, or injuries resulting from loss of companionship and consortium. A plaintiff should be permitted to prove the damages resulting from a tortfeasor's negligent infliction of emotional trauma. *Leong v. Takasaki,* 55 Hawaii 398, 520 P.2d 758, 767 (Hawaii 1974). This includes recovery for mental anguish. *Id.* 651 S.W.2d at 253.

Mrs. Sanchez offered proof that she was suffering from traumatic depressive neurosis, that she was despondent, disoriented, and had frequent headaches, plus neck and shoulder pains. The court held such proof sufficient to allow recovery for her mental anguish. The court also noted that, under the Wrongful Death Act, a plaintiff is not required to be within the zone of danger, or to witness an accident to recover for mental anguish.

In light of the court's holding in *Sanchez,* we hold appellee in the instant case is entitled to recover the general damages awarded her by the jury for her men-

tal anguish. However, we hold that the separate award of $60,000 to Mrs. Reed for her past and future medical expenses, lost earnings, and loss of earning capacity are not recoverable elements of damage as submitted under the circumstances of this case. We sustain appellant's points of error, only to the extent such special damages for Paula Reed's personal injuries were awarded.

■ We overrule appellants' points of error thirteen through twenty-one, and hold appellee was also entitled to recover damages for the loss of society of her son. While the plaintiffs in *Sanchez* only sought recovery for mental anguish, we feel the court made it clear that recovery would be allowed under the wrongful death statute for both mental anguish and loss of companionship and society. We find nothing in the court's opinion to indicate that a plaintiff is required to choose one form of recovery over the other. *Sanchez v. Schindler, supra.* *See also Madisonville Independent School District and L.P. Polk v. Judy Gail Kyle,* 658 S.W.2d 149 (1983).

In point of error twenty-one, appellants assert the trial court erred in overruling their objections to plaintiff's opening statement and in denying their motion for mistrial based on improper statements, because such statements were calculated to cause and did cause an improper verdict. We disagree.

■ Appellants moved for mistrial after several objections had been lodged to certain comments made during appellee's opening statement. With one exception, the objections were either sustained or counsel withdrew his statements. When requested, the court instructed the jury to disregard such statements. However, the court overruled appellants' objection that opposing counsel's comment, "the only thing that Gulf States Utilities and Southwestern Bell Telephone understands is money," was prejudicial to large corporations. While this argument does not meet wholeheartedly with our approval, we hold such argument does not constitute reversible error. *Standard Fire Insurance Co. v. Reese,*

584 S.W.2d 835 (Tex.1979). We overrule point of error twenty-one.

■ In point of error twenty-two, appellants claim the trial court erred in overruling their motion for mistrial based on appellee's improper jury argument. They argue that the motion for mistrial made immediately after the jury retired was adequate to preserve error, because timely objection and instruction as to each argument could not cure the cumulative effect of appellee's improper argument. *See Hemmenway v. Skibo,* 498 S.W.2d 9, 14 (Tex.Civ. App.—Beaumont 1973, writ ref'd n.r.e.). Appellants objected to several arguments made by appellee's counsel. All objections made were sustained, and with one exception, the court instructed the jury to disregard the statements. No objections were made to the numerous other statements complained of on appeal. While we agree that the cumulative effect of the arguments complained of may have exceeded the bounds of proper argument, appellants have failed to sustain the burden of showing the argument was harmful error. *Standard Fire Insurance Co. v. Reese, supra;* TEX.R. CIV.P. 434. We overrule point of error twenty-two.

In points of error twenty-four through thirty-one, appellants contend the court erred in failing to clearly define and delineate all the elements of damages submitted to the jury, including the term mental anguish, because such elements, as submitted, would permit recovery of double damages. In addition, they argue the court erred in failing to instruct the jury on mitigating factors with regard to damages for loss of society. We do not agree with these contentions.

Upon submission of Special Issue No. 1, the jury found the following:

What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence would fairly and reasonably compensate the parents for their loss, if any, proximately caused by the death of Vernon Lee Johnson, Jr.?

Consider the following elements and none other:

(a) the earnings, if any, which in reasonable probability Vernon Lee Johnson, Jr. would have made before reaching the age of 18 years, and the reasonable cash value of such services, if any, that in reasonable probability would have been rendered by the minor in aid of his parents in everyday affairs before reaching the age of 18 years, less the reasonable and probable expense of his care, support, education, and maintenance during such time;

ANSWER in dollars and cents, if any.
ANSWER: $_____-0-_____

(b) the reasonable cash value of such future contributions, if any, which the minor in reasonable probability would have made to his parents after he would have reached the age of 18 years;

ANSWER in dollars and cents, if any.
ANSWER $___20,000.00___

(c) the reasonable cash value of the loss of society, if any, sustained by the parents as a result of the the death of Vernon Lee Johnson, Jr. The term "society" embraces a broad range of mutual benefits each family member receives from the others' continued existence, including love, affection, care, attention, companionship, comfort, and protection.

ANSWER in dollars and cents, if any.
ANSWER $500,000.00

As to any amounts, if any, awarded in Special Issue No. 1, subissues (a), (b), and (c) above, you shall apportion such amounts between the following persons:

ANSWER in percentages

| PAULA REED | 100% |
| | 100% |
| VERNON LEE JOHNSON, SR. | 0% |

(d) the reasonable cash value of the mental anguish, if any, sustained by Paula Reed in the past and which in reasonable probability she will sustain in the future, if any, as a result of the death of Vernon Lee Johnson, Jr.

ANSWER in dollars and cents, if any.
ANSWER $500,000.00

(e) the reasonable expense of the necessary medical and hospital care, if any, received by Paula Reed in the past as a result of the death of Vernon Lee Johnson, Jr.

ANSWER in dollars and cents, if any.
ANSWER $___25,000.00___

(f) the reasonable expenses for necessary medical and hospital care, if any, which Paula Reed will, in reasonable probability, require in the future as a result of the death of Vernon Lee Johnson, Jr.

ANSWER in dollars and cents, if any.
ANSWER $___20,000.00___

(g) the amount of lost earnings in the past sustained by Paula Reed, if any, as a result of the death of Vernon Lee Johnson, Jr.

ANSWER in dollars and cents, if any.
ANSWER $___15,000.00___

(h) the reasonable cash value of the loss of earning capacity, if any, which, in reasonable probability, Paula Reed will sustain in the future as a result of the death of Vernon Lee Johnson, Jr.

ANSWER in dollars and cents, if any.
ANSWER $_____-0-_____

The jury was instructed not to award damages for anger, hostility, bereavement, mourning, sorrow, fear, or revenge.

 Upon reviewing Special Issue No. 1, we find the court properly charged the jury on each element of damages, and, except for the special damages we disallowed, each element was sufficiently distinct to avoid double recovery. Appellants' argument that the court erred in refusing their requested definition of "mental anguish" is without merit. They cite no cases, nor do we know of any, where such definition must be given. We believe this is not a legal term, but is of ordinary significance and meaning. Appellants' contention that a charge should have been submitted on mitigation of damages for loss of society is groundless. We overrule appellants' points of error twenty-four through thirty-one.

In point of error thirty-two, appellants claim there is insufficient evidence to support the $10,000 jury award for Vernon Johnson's pain and suffering. Alternatively, they ask for a remittitur. We have

carefully reviewed the entire record, and find ample evidence to support this award.

 Generally, we will not disturb a jury finding based on the ground of excessiveness if there is any probative evidence to support the award. *T.J. Allen Distributing Co. v. Leatherwood*, 648 S.W.2d 773 (Tex.App.—Beaumont 1983, writ ref'd n.r.e.); *Texas Construction Service Co. of Austin, Inc. v. Allen*, 635 S.W.2d 810 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e. *Browning v. Paiz*, 586 S.W.2d 670 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.). The appellate court will not substitute its judgment for that of a jury unless the record indicates the award resulted from the jury's passion, prejudice or improper motive. If, after reviewing the evidence, the court finds the award so excessive as to shock the conscience of the court, a remittitur is proper. *International Harvester Company v. Zavala*, 623 S.W.2d 699 (Tex. Civ.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.); *Armellini Exp. Lines of Florida v. Ansley*, 605 S.W.2d 297 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.). We find nothing offensive to our sense of justice in this award. Testimony was introduced that Vernon Johnson, Jr. felt conscious pain from electrocution by a high-voltage wire for approximately five seconds. In light of the intensity of such a shock, it is our opinion $10,000 is in no way excessive.

 In points of error thirty-three through thirty-six, appellants assert that the jury awards of $500,000 for loss of society and $500,000 for mental anguish were excessive, and there was insufficient evidence to support such awards. Vernon Lee Johnson, Jr. was a healthy thirteen year-old when he died. He was appellee's only child, and had a close, affectionate relationship with his mother. Following his death, appellee was admitted into John Sealy Hospital in Galveston, where she remained for approximately five months. She was diagnosed as suffering from a severe depressive reaction, precipitated by the death of her son. Appellee had suffered a severe weight loss, and had extreme diffi-

culty sleeping. She was placed on antidepressants during her hospital stay, and due to the chronic nature of her depression, it was necessary for her to continue her medication for an indefinite period following her release. We recognize that no one can put a precise dollar value on the loss of one's child and the resulting effects of such loss; however, after considering the testimony, evidence, and surrounding circumstances of this tragic event, we cannot say the awards were excessive or unsupported by the evidence. *T.J. Allen Distributing Co. v. Leatherwood, supra; Texas Construction Service Co. of Austin, Inc. v. Allen, supra; Armellini Express Lines of Florida, Inc., supra.* We overrule points of error thirty-two through thirty-six.

 In points of error thirty-seven and thirty-eight, appellants argue the trial court erred in allowing pleadings and proof of grief, sorrow, anger, fear, and revenge as elements of recovery for mental anguish. We find no merit in these contentions. The court's charge included appellants' requested instruction that the jury not consider appellee's anger, hostility, bereavement, mourning, sorrow, fear, or revenge in awarding damages. We overrule points thirty-seven and thirty-eight.

 Appellants assert, in point of error thirty-nine, that the trial court erred in refusing to allow appellants to ask prospective jurors if they knew plaintiff by any of her former married names. We disagree. While counsel may have broad latitude on voir dire to enable him to exercise his peremptory rights, such right is not unlimited; it is subject to the trial court's discretion, and will not be revised on appeal unless there is a clear case of abuse of discretion. *Texas Employers Insurance Assn. v. Loesch*, 538 S.W.2d 435 (Tex.Civ.App.—Waco 1976, writ ref'd n.r.e.); *Johnson v. Reed*, 464 S.W.2d 689 (Tex.Civ.App.—Dallas 1971, writ ref'd n.r.e.), *cert. denied*, 405 U.S. 981, 92 S.Ct. 1197, 31 L.Ed.2d 256 (1972). Appellee was introduced to the jury panel, and was present during the voir dire examination. The prejudicial effects of introducing appellee by several former names could be

easily perceived as outweighing any benefits to appellants during voir dire. We find no abuse of discretion, and overrule point of error thirty-nine.

In their last point of error, appellants assert the trial court erred in refusing to allow evidence that appellee shot and killed a man six or seven months after her son's death. Appellants argue that such testimony was relevant to show what emotional impact, if any, such an occurrence had on appellee with regard to her past, present, and future mental condition.

Appellee's psychiatrist testified out of the jury's presence that appellee's initial severe depression requiring hospitalization was caused by her son's death, as was her chronic depressive condition. He stated that her mental state became worse immediately after the shooting, but no significant long-term problems resulted from it. While admitting testimony about the killing may have had some probative value in assessing appellee's mental condition immediately thereafter, we feel any value was far outweighed by the prejudicial effect such evidence would have provoked. We overrule appellants' point of error.

The trial court's judgment is affirmed, except to the extent it allows recovery to Mrs. Reed for her past and future medical expenses, lost earnings and loss of earning capacity. That portion of the judgment is accordingly reversed and judgment rendered in favor of appellants on such items. The judgment otherwise is affirmed.

Reversed and rendered in part; affirmed in part.

J. CURTISS BROWN, Chief Justice, dissenting.

Finding myself in disagreement with some of the holdings of the court, I would like to record my respectful dissent. The parties have favored the court with citation of many authorities, but in most respects, save one, the case reduces itself to a consideration of the impact of *Sanchez v. Schindler*, 651 S.W.2d 249 (Tex.1983). We appear to be among the first of many courts that will be called upon to deal with questions raised by this decision.

The precise holding of *Sanchez* is that damages for mental anguish are recoverable under the Texas Wrongful Death Act for the death of a child. TEX.REV.CIV. STAT.ANN. art. 4671 (Vernon Supp. 1982–1983).

In the cause under consideration the trial court submitted Special Issue No. 1(c) inquiring as to damages for the reasonable cash value of the loss of "society" of the deceased child. "Society" was defined as a broad range of mutual benefits each family member receives from the continued existence of the other family members, including *love, affection,* care, attention, companionship, comfort, and protection. A verdict and judgment against appellants for $500,-000.00 was rendered on the basis of this issue. In Special Issue No. 1(d) the court submitted the reasonable cash value of the past and future mental anguish suffered by Mrs. Reed as a result of the death of her son. An additional $500,000.00 was found by verdict and rendered by judgment against appellants on this issue. "Mental anguish" was not defined.

Loss of society, as defined, is included in the term "mental anguish" and the elements of damage thereof should not be separately submitted so as to invite, if not compel, a double recovery. "Mental anguish" and "loss of society" constitute *emotional distress* which should constitute one element of damages in a wrongful death case. I would, therefore, reverse and render the separate finding of damages for loss of "society" and consider, under the appropriate standards, the question of excessiveness with respect to the finding on mental anguish.

There is language in *Sanchez* both supportive of and contrary to my view. The supreme court noted that the Arizona Wrongful Death Statute had been interpreted to "allow recovery for loss of companionship and comfort and ... that these losses result in mental anguish". *Sanchez*, 651 S.W.2d at 254. The court further stated: "Therefore, our holding that a plaintiff

may recover under the Wrongful Death Statute for loss of society and companionship and damages for mental anguish for the death of his or her minor child applies to all future causes as well as those still in the judicial process." *Id.* This latter ruling would seem to indicate that all of these elements, save love and affection, may be considered; it fails, however, to decide the question whether the submission should be joint or separate.

In any event, the court in *Sanchez* states: "The judicial system has adequate safeguards to prevent recovery of damages based on sympathy or prejudice rather than fair and just compensation for the plaintiff's injuries." *Sanchez,* 651 S.W.2d at 253. Among these safeguards is our duty to review the record as a whole so that we may exercise our sound judicial judgment and discretion in ascertaining the amount which would be reasonable compensation for the injuries sustained and treating the balance as excess. Having decided upon an amount that would be reasonable compensation, the court should authorize a remittitur of the excess in accordance with its sound judgment. *Flanigan v. Carswell,* 159 Tex. 598, 324 S.W.2d 835 (1959). The court has failed to make this assessment according to correct standards.

I agree with my brethren that the points challenging the conduct of counsel for appellee do not reflect error. While vigorous and effective, most of the arguments were proper. Those arguments approaching impropriety certainly reflect no harmful error under *Standard Fire Insurance Co. v. Reese,* 584 S.W.2d 835 (Tex.1979).

I am unable to agree with the holding of the court that the refusal of the trial court to allow evidence that Mrs. Reed shot and killed a man six or seven months after her son's death did not constitute reversible error. Ordinarily, in an action for wrongful death the damages are fixed as of the time of the occurrence made the basis of suit and evidence of such a shooting would be entirely irrelevant unless an independent basis for admission is shown. Here, Mrs. Reed sought and obtained substantial damages for mental anguish for a period of time covering the shooting incident. It may be true, as the appellees' psychiatrist indicated, that Mrs. Reed suffered no significant long term problems as a result of her killing another human being. The jury, however, could conclude otherwise. The jury is the judge of the credibility of the witnesses and the weight to be given their testimony. The fact is the jury may not have believed this expert, and with good reason. In light of the claims being asserted and allowed, I cannot in good conscience apply the rule that the evidence, though probative, should be excluded because of prejudicial effect.

I would sustain appellants' last point.